GERKE, Respondent, v. ZIMMERMAN, Appellant.

(154 N. W. 812.)

(File No. 3731   Opinion filed November 19, 1915.   Rehearing denied January 6, 1916.)

1. **Master and Servant—Injury From Hay Stacker—Contributory Negligence—Loose Pulley, Fast Driving—Sufficiency of Evidence.**

   In a suit for damages from injuries to plaintiff, employed by defendant to drive horses in operating a hay stacker, plaintiff claiming that, by reason of defendant owner's negligence in allowing a bolt to which a pulley through which the rope used in hoisting the hay-fork was attached, to become loose in its fastening to the frame of the rigging, and that, while the fork was being dumped of its load the hook or eye fastened to the frame and to which the pulley was fastened straightened out, thus releasing the pulley, and that the fork fell upon him, causing the injury, while defendant claimed that the break or straightening of the hook was caused by the overstrain on the rope caused by plaintiff's driving the horses too fast, held, that the evidence fails to establish contributory negligence by plaintiff; that the team was not being driven faster than usual, while it appears that defendant's foreman had instructed plaintiff to drive the team fast, and had himself driven it fast; nor is it shown that anything had occurred to direct plaintiff's attention to the loose and unstable condition of the said fastening of pulley at that particular time.

2. **Master and Servant—Injury to Servant—Negligence—Assumption of Risk—Evidence.**

   In a suit for damages from injury to an employee operating a hay stacker, caused by the hay-fork falling upon plaintiff, it appearing that the operation of the machine in the imperfect condition it was in at the time, was not so obviously dangerous that plaintiff was negligent in assuming the risk involved; that he accepted it in the condition in which defendant turned it over to him and as it had been while defendant was using it.

3. **Master and Servant—Injury to Servant—Contributory Negligence—Assumption of Risk—Employer's Duty—Servant's Duty.**

   In determining whether plaintiff employee was negligent in assuming the risk involved in operating a hay stacker, held, that it was defendant employer's duty to see that the machine in

question was in a reasonably safe condition when placed in charge of his employee; that the servant has the right to rely upon master's proper performance of his duty without inquiry by servant; that plaintiff was not obligated to make minute examination to ascertain whether the machine could be operated without unnecessary hazard to himself, and his failure to do so before using the machine was not contributory negligence.

4. **Master and Servant—Injury to Servant—Operation of Hay Stacker—Instrumentalities—Repairs, Employer's Duty Concerning.**

In a suit for damages from injury to an employee in operation of a hay stacker, held, that, notwithstanding the stacker was of standard make in common use, and of sufficient strength to do the intended work, and had been used during most of two seasons, and before the present season had been thoroughly repaired, yet the employer was further charged by law with exercise of at least reasonable care in discovering defects therein, and in keeping it so in repair as to render it reasonably safe and not subject operators to unnecessary hazard while operating it.

5. **Master and Servant—Injury to Servant—Negligence—Discovery of Defect in Machine by Servant—Instructions.**

In a suit by an employee for damages from injury alleged to have resulted from breaking of a hay stacker attributable to employer's negligence, the court instructed jury that, unless they found that the complained-of defect in the eyebolt causing the accident resulting in the injury was such as could have been discovered by exercise of reasonable care and diligence, plaintiff could not recover; the evidence showing that the half-inch bolt passed through the crossbar of the hay-stacker frame, that the inner side of the eye had been to some extent worn away by wearing and jerking of the hook on the pulleys through which the hoisting rope ran, that the nut and washer holding the bolt in place on the frame had worn into the wood, making the bolt loose in the hole, that to the extent to which the hook (or eye) on the bolt was worn away by the hook on the pulley, it had become weakened, and that these conditions were known to defendant's other employees prior to the accident, but did not appear to be known to, or to have been called to plaintiff's attention. Held, that the giving of said instruction was not prejudicial error.

6. **Master and Servant—Injury to Servant—Negligence—Evidence, Admissibility, Materiality.**

Where, in a suit for damages from injury to an operator of a hay-stacker, caused by the straightening out of a hook

holding a hoisting-rope pulley, the absence of a cable and a
spring attached thereto, and the substitution therefor of a
rope, used in process of unloading and returning the hay-fork
from stack to load of hay, was not in issue on the trial, but the
evidence showed the hook had become weakened by wear,
as had the bolt and hook by which the same was attached to the
frame, and that the strain on the hook was increased by the
use of the rope in place of the cable and spring, held, that
evidence explaining the operator's position between the loading
arms of the stacker at the time of the accident was properly
admitted.

Appeal from Circuit Court, Corson County.   Hon. RAYMOND
L. DILLMAN, Judge.

Action by Hugo Gerke, against D. Zimmerman, to recover
damages from injury to plaintiff while operating defendant's hay-
stacker.   From a judgment for plaintiff, and from an order deny-
ing a new trial, defendant appeals.   Affirmed.

*Porter & Grantham, and N. B. Bartlett, for* Appellant.
*Robert Pearson, George S. Rix,* and *Howard Babcock,* for
Respondent.

(3) To point three of the opinion, Appellant cited:   Ameri-
can Brewing Co. v. Talbot, (Mo.) 42 S. W. 679; C., B. & Q. R.
Co. v. Shalstrom, 195 Fed. 725; Persinger's Admx. v. Alleghany
Ore & Iron Co., (Va.) 46 S. E. 325; Coyle v. Griffing Iron Co.,
(N. J.) 44 Atl. 665; Cregan v. Marston, 126 N. Y. 568, 22 Amer.
St. Rep. 854; Esrey v. Southern Pac. Co., (Cal.) 37 Pac. 500;
Edge v. Railway Co., (N. C.) 69 S. E. 74; Green v. Railway Co.,
(Cal.) 79 Pac. 719.

Respondent cited:   Rogers v. Ponet et al., (Cal.) 132 Pac.
851; Van Kirk v. Butler, (N. Mex.) 145 Pac. 129; LaBatt's Mas-
ter & Servant, Sec. 1178; Harrigan v. Interurban Ry. Co., (Iowa)
149 N. W. 895; Midland Valley Ry. Co. v. Williams, (Okla.) 141
Pac. 1103; Solleim v. Norbeck & Nicholson Co., 147 N. W. 266,
267; Cinhovitch v. Thistle Coal Co., (Ia.) 121 N. W. 1036, 1038.

(4) To point four of the opinion, Respondent cited:   Weelle
v. Celluloid Co., (N. Y.), 12 Am. Neg. Rep. 431; Hincicotti v.
O'Brien, (Conn.) 17 Am. Neg. Rep. 468; Westbrooke v. Crow-
den, (Tex.) 8 Am. Neg. Rep. 350.

(5) To point five of the opinion, Appellant cited:   Patton v.
Tex. & Pac. Ry. Co., 179 U. S. 658; Painton v. M. C. Ry. Co.,

83 N. Y. 7; Dahl v. Puget Sound Iron & Steel Works, (Wash.) 137 Pac. 315; Mensch v. Pa. R. Co., (Pa.) 25 Atl. 31; Spille v. Wisconsin Bridge & Iron Co., (Wis.) 81 N. W. 397; Lyons v. Knowles, (Cal.) 32 Pac. 883.

POLLEY, J. Plaintiff in this action had judgment for personal injuries received while operating a haystacker for defendant, and the injury is claimed to have been the result of the defective condition of the stacker at the time of the injury. The stacker in question is composed of a wooden frame resting upon the ground and held in place by stakes driven into the ground. On either side of the end of this frame, next to the stack, are fastened two long strips of wood, called the "loading arms," and, upon the outer ends of which are fastened certain wooden arms or fingers, called the "loading fork." This loading fork carries the hay from the ground to the stack. The fork, with the load, is elevated to the stack by horse power, which is applied by means of a draft rope. This rope passes through various pulleys, two of which are attached to that portion of the frame above mentioned that is nearest to the stack and which is styled the "crossbar." These pulleys are so arranged that, when the team pulls on the rope, the fork, with the load of hay, rises from the ground and, passing through the arc of a circle, is thrown directly towards the stack; but, in order to carry the hay the desired distance, the fork must pass a point directly over or perpendicular to the lower ends of the loading arms. To use a common phrase, it is carried "past the balance." Running from the loading fork to the outer end of the said frame is a wire cable, on one end of which is a strong spiral spring. The purpose of this cable and spring is two-fold. By properly adjusting the length of the cable, it will permit the fork to carry the load the required distance, but will prevent the fork from falling over onto the stack, while the spring will cause it to stop gradually and without unnecessary jerking and straining on the pulleys and their fastenings; and, as the rope slacks, the said spring also pulls the empty forks back past the balance, so that, as the team is backed and the rope slacks, the fork will return to the ground by its own weight; but, so long as the pulleys and fastenings are all in place, the fork can come down no faster than it is permitted to do by the backing of the team. Two of the pulleys, through which the draft rope runs, are fastened

to the crossbar of the frame by means of iron hooks (or eyebolts) which pass through the crossbar and are held in place by means of washers and nuts on the lower side.

About a month prior to the happening of the accident that caused the injury complained of, the spiral spring, above mentioned, broke, and a rope was substituted for the cable and spring. The rope would stop the fork and keep it from falling over onto the stack, but it would not pull it back past the balance as the spring had done; and, in order to get it back, it was necessary for the operator to pull it back by means of said rope; but, to do this, he must go in between the loading arms and under the fork as it comes down. Neither would this rope stop the loading fork gradually and without jerking as the spring had done, but would stop it with a jerk. Plaintiff had been using the stacker for some time before this, but was not using it, and was not present, at the time the spring was broken and the rope put on in its place. He returned to work on the following day, however, when the defendant's foreman gave him instructions and showed him how to operate the stacker with the rope.

In elevating a load of hay—and, by a strange coincidence, it was the last load of the last stack of the season—the eye (or hook) on the bolt, which held one of the pulleys to the crossbar of the frame, straightened out and released the pulley; but this fact was not discovered until after the accident. A noise, as though something had slipped or broken, was heard, and plaintiff, thinking it was caused by the loosening of one of the stakes, took a maul and drove the stake back in place. He then took hold of the rope that was fastened to the fork and pulled the fork back past the balance, but, because of the pulley having been released from the cross-bar, there was nothing to check the descent of the fork, and it fell so rapidly that plaintiff did not have time to get out from between the loading arms, and one of them fell upon him, resulting in a very serious and permanent injury.

It is alleged in plaintiff's complaint that it was the duty of defendant to provide plaintiff with a safe and suitable haystacker and to keep the same in proper repair, but that the stacker furnished by defendant was worn and defective and was too weak to perform the work for which it was intended. Defendant denied this and alleged that the said stacker was, in all respects, a safe

and suitable stacker, of sufficient strength to do the work for which it was intended, and in good repair; and further alleged that the injury was the result of negligence and want of ordinary care on the part of the plaintiff. This presents two questions for determination, that of "instrumentalities" and "contributory negligence."

[1] In support of the latter contention, defendant claimed that, in elevating the last load of hay, plaintiff had driven the team so fast that, when the fork reached the end of the hope that connected the fork with the outer side of the frame, the fork was stopped with a jerk, thereby overstraining the eyebolt and causing it to straighten out and release the pulley. That the fork stopped with a jerk that overstrained the eyebolt and caused it to straighten and release the pulley is unquestionably true; and that the fork would necessarily stop with a jerk after the rope was substituted for the spring is self-evident. But it was not shown that the team had been driven faster than usual on this occasion, and it was shown that defendant's foreman instructed plaintiff to drive the team fast—"to hit her hard," as the witnesses expressed it—in order to give the fork sufficient momentum to throw the hay over onto the middle of the stack where it was wanted. It was also shown that defendant's foreman had driven the team before plaintiff commenced to operate the stacker, and that he had driven it fast, and that he had instructed plaintiff to drive in the same manner. In further support of this contention, defendant claimed that plaintiff was negligent in not discovering that the pulley was loose before he undertook to lower the fork, but neither does this claim find any support in the evidence. It is true, of course, that, had plaintiff examined this pulley before he undertook to lower the fork, he would have discovered that it was loose; but it was not usual to inspect the various parts of the stacker every time a load was hoisted, and plaintiff was not charged with any such duty. It also appears that more or less loose hay was constantly falling from the fork, and that much of the time the pulleys could be seen only by clearing away the loose hay. Nothing had occurred to direct plaintiff's attention to this pulley at that particular time. He heard a noise, but one of the stakes had been making some trouble by working loose. He thought it was the loosening

of this stake that had caused the noise and took the precaution to drive it down before he undertook to lower the fork.

[2, 3] Neither do we believe, as is claimed by defendant, that the operation of the machine in the condition in which it is shown to have been at the time plaintiff was operating it was so obviously dangerous that plaintiff was negligent in assuming the risk involved. In the first instance, he accepted the machine just as defendant turned it over to him and just as it had been while defendant was using it. When it was broken, it was defendant (through his foreman) who repaired it and again turned it over to plaintiff and gave him instructions as to how to operate it in its repaired condition. It was the duty of defendant to see that the machine was in a reasonably safe condition at the time it was placed in charge of plaintiff; and it is a well-established rule of law that the servant has the right to rely upon the master for the proper performance of his duty without inquiry on the part of the servant. Plaintiff was under no obligation to make a minute examination of the machine in order to ascertain whether it could be operated without unnecessary hazard to himself, and his failure to make such examination before using the machine does not constitute contributory negligence.

[4] Upon the question of instrumentalities, it was shown that the stacker was of standard make, in common use, and of sufficient strength to do the work for which it was intended; that it had been used throughout the entire haying season of 1909, and in 1910 from the 7th day of July to the 8th day of September, when the accident occurred. It was also shown that, before the beginning of the 1910 haying season, the stacker had been thoroughly overhauled, repaired, and the worn parts replaced with new ones. This, we believe, was sufficient to satisfy the law so far as providing a safe and suitable machine at that time; but, in addition to this, defendant was charged by law with the duty of exercising at least reasonable care in keeping it in such a state of repair as would render it reasonably safe and not subject the operator to unnessary hazard while so engaged. It was not only necessary to repair the machine at the beginning of the haying season, but it was just as necessary that defendant should exercise reasonable care in keeping it in repair while it was being used. Without holding that defendant was bound, at all times, to know all of the

defects and weaknesses that might be occasioned by wear, he was bound to exercise such a degree of care in discovering and repairing defects as was necessary to keep the machine in a reasonably safe condition.

[5] In plaintiff's original complaint, after alleging defendant's failure to furnish plaintiff with a safe and suitable haystacker and a safe and suitable place to work, he alleged:

"That said stacker was more particularly defective in that the headblock of the loading arms was too weak to support the loading arms as they were raised and lowered. * * * That the headblock of the loading arms of said haystacker broke and caused the loading arms of the haystacker to fall onto plaintiff."

This allegation is not only meaningless when applied to the facts in the case, but it is without any support whatever in the evidence; but, after the evidence was all in, for the purpose of making the complaint conform to the testimony, plaintiff filed an amended complaint in which he alleged:

"That the defendant failed to so keep the said haystacker in a reasonably safe and suitable condition and state of repair, but negligently and carelessly permitted the same to become worn and defective, and particularly the eye-bolt which attached to the head or crossbar of the base of the haystacker,—that is, the crossbar which would be nearest to the stack when the haystacker was in operation; and that this crossbar or sill at the base of the haystacker had become worn on the inside by reason of the constant pulling and strain upon the eyebolt, so that the nut which was attached to the lower end of the bolt on the inside of the headbar or sill at the base of the machine had worn into the wood on said cross-sill or crossbar so as to permit of some play and to permit the bolt itself to draw up through the wood to such an extent that the open end of the bolt become pulled out of the hole in which it was usually kept, which hole was upon the upper side of said sill; and that the said eyebolt was made of about one-half inch iron and had become considerably worn in the upper part of said hook where the pulley was attached or hooked in, and that by reason of said worn condition of said hook on account of the constant friction and wearing of it by the eyebolt and the pulley had become worn away and weakened to such an extent that the same straightened out and permitted the pulley to slide, which permitted

the arms and forks of said haystacker to fall to the ground and to fall upon this plaintiff."

And further alleged that:

It was "wholly on account of defendant's negligence in permitting the said hook or eyebolt of the said crossbar on the base of said machine to become worn and weak, as hereinbefore particularly stated, that the said haystacker broke and the said eyebolt broke and straightened out so as to permit the pulley to slide, thereby loosening the ropes which held up the arms which were attached to said base of said haystacker and permit them to fall upon the plaintiff."

.Upon this issue, the court instructed the jury as follows:

"You are therefore instructed that, unless you find from the evidence that the defect in the eyebolt or hookbolt which caused the accident resulting in the injury was such as could have been discovered by the defendant by the exercise of reasonable care and diligence, the plaintiff cannot recover, and your verdict must be for the defendant."

This limited the consideration of the jury to the alleged weakness of the eyebolt as the cause of the injury. Upon this question, the evidence shows that this bolt (or hook) was made of half-inch iron; that it passed through the crossbar of the frame and was held in place by a washer and nut on the under side. Whether the end of the bolt that formed the hook (or eye) was drawn into the wood far enough to prevent, or help to prevent, the hook from straightening out, as is alleged in the amended complaint does not appear from the evidence; but it does appear that the inner side of the eye had been worn away, to some extent, by the wearing and jerking of the hook on the pulley, and that, because of such jerking, the nut and washer had worn into the wood on the under side of the cross bar so that the bolt was loose and "wobbly" in the hole. It does not appear that the latter condition would tend to weaken the hook on the bolt, but it is self-evident that to the extent to which the hook (or eye) on the bolt had been worn away by the hook on the pulley, to just that extent it had become weakened. Both these conditions had become apparent to, and had been noticed by, certain of defendant's employes prior to the accident; but such conditions do not appear to have been known by, or to have been called to the attention of, the plaintiff.

It cannot be said, nor is it claimed, that, so long as the machine was equipped with the cable and spring, the eyebolt, in its original condition, was not strong enough to stand the strain that was likely to be put upon it. But the bolt had become weakened by wear, while the strain upon it was increased by the use of the rope; and it was the duty of the defendant, when he substitued the rope for the cable and spring, to see that the other parts of the machine were so strengthened as to enable them to withstand the increased strain that would result from the change of equipment; and, in failing to do this, he failed to perform his duty to plaintiff; and it was the failure to perform this duty that resulted in the injury to the plaintiff.

We believe this case comes within the rule announced by us in Iverson v. Look, 32 S. D. 321, 143 N. W. 332. In that case, it is said:

"It was incumbent upon defendant to take such reasonable and needful precautions in regard to the machinery being used by the plaintiff as would not subject him to needless or useless exposure to danger."

If this rule is correct—and it is sanctioned by the highest court in the land—defendant was guilty of negligence in failing to keep the stacker in question in a proper and safe state of repair. Mather et al. v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 461.

[6] Appellant objected to the admission of evidence of the absence of the cable and spring and the substitution of the rope upon the ground that it was immaterial to the issues made by the pleadings. It is true, the absence of the cable and spring was not an issue in the case. Neither was this evidence offered for the purpose of showing negligence on the part of defendant, but only for the purpose of explaining plaintiff's presence between the loading arms of the stacker at the time of the accident. While it may have been the absence of the cable and spring that required plaintiff's presence in that particular place at that time, still, but for the weakness of the eyebolt, plaintiff would not have been injured, and plaintiff was in no obvious danger in operating the loading fork by means of the rope.

Defendant took numerous exceptions to the instructions given the jury by the trial court, and also to the refusal to give other

instructions requested by defendant. These objections have all been exhaustively argued by defendant's counsel; but, after a most painstaking examination of them all, we fail to find that defendant has been prejudiced by any of the rulings complained of. While the instructions given were unnecessarily prolix, and while they may have tended to confuse the jury, they were, in the main, favorable to defendant.

Failing to find any prejudicial error in the record, the judgment and order appealed from are affirmed.