BREEN, Respondent, v. KEEN, Appellant.

(225 N. W. 223.)

(File No. 6431. Opinion filed May 7, 1929.)

*Charles F. Tym*, of Paris, Ill., and *E. E. Wagner*, of Mitchell, for Appellant.

*H. G. Giddings*, of Mitchell, for Respondent.

BURCH, J. This is an action to recover for personal injuries claimed to have been received by plaintiff as a result of defendant's negligence. The case was tried to a jury, and the jury returned a verdict for plaintiff in the sum of $500. Defendant appeals from the judgment entered thereon and an order overruling his motion for a new trial.

Respondent was working on a farm for appellant. As a part of his duties he hauled straw to appellant's cattle across the James river. In doing so he used a road running from the farm buildings above the river down the bank of the river to a ford. The road down the bank was cut out so as to run diagonally along and down the bank, so that in going from the buildings to the river the bank was to the right and the fill to the left. He used a wagon and hayrack drawn by horses. The wagon is described as a manure spreader wagon; that is, the running gear had formerly been the running gear of a manure spreader. It differed from the ordinary

farm wagon in that it was somewhat wider, the wheels were steel wheels, and the tongue was fastened to the front axle by means of hinged bolts. The front bolster was shorter, and the hayrack was bolted or clamped to the front bolster. In going down the hill respondent for the purpose of a brake would tie a rear wheel. For convenience he had attached a chain to the bed piece of the rack with one end hanging so that it could be hooked around the felloe of the wheel and hold the wheel from turning while going down the hill. Respondent claims that on Friday he loaded the hayrack with straw and left it standing in the yard; that on Sunday afternoon following he undertook to take the load across the ford to feed appellant's cattle; that after hitching the horses to the wagon he drove to the brink of the hill and there attached the chain as usual and started to descend; that after driving a short distance the horses were pulled or crowded over against the bank to the right thereby causing his load to upset to the left towards the river; that he was thrown from the load as it upset and was injured. The cause of the accident is ascribed to a change in the manner of attaching the chain whereby the fastened end had been removed from the bed piece of the rack and fastened to the front axle in such a manner as to pull the tongue of the wagon to the right and turn the wagon into the bank. Appellant admits changing the manner of fastening the chain, but claims that he notified respondent that he had done so, and he also claims that the chain was tied to the axle close to the center bolt on the left. Respondent's testimony and that of his wife is that after the accident the chain was around the axle on the right end next to the right wheel. Respondent denies that he was notified of the change, and says he had no knowledge of the change, and used the wagon believing it was safe and as he had fixed it and used it on other occasions.

There are but two questions discussed in appellant's brief: First, appellant says if there was an injury it was the result of respondent's failure to exercise due care; that respondent was guilty of contributory negligence in that the chain as attached to the front axle of the wagon was plainly visible and if he had looked he could have seen how it was applied; that it was his duty to look and that he assumed the risk of using the wagon in that condition as one of the hazards incident to his employment. Second, that the evidence is insufficient to sustain or justify the

verdict for the reason that it was physically impossible for the wagon to have tipped over from the cause described under the conditions shown by the testimony of respondent and his wife.

The first question involves the sufficiency of the evidence to support the verdict. The evidence is conflicting and therefore was a matter for the determination of the jury. It is undisputed, however, that respondent did not see or notice the change in the manner of fastening the chain. As to whether or not he knew without looking is in dispute, appellant contending that he told respondent, and respondent and his family denying that fact. The question therefore narrows itself to the one point whether or not it was the duty of respondent to look and know without having been told. It seems to be the theory of appellant that in the exercise of ordinary care it was his duty to examine the chain and the manner in which it was fastened immediately before using it, and if he had done so and had found the chain hitched to the axle, then he would have assumed the risk incident to using it in that manner. As to the duty to see, appellant cites 39 C. J. 503, in which it is said:

"A master is not bound to warn and instruct his servant as to dangers which are patent and obvious, a danger being generally considered as within the rule where it is open and obvious to the senses of any man of ordinary intelligence, or where it is as easily discernible by the employee as by the master, or where it is discoverable in the exercise of that reasonable care which persons of ordinary intelligence may be expected to take for their own safety."

Appellant also cites the same volume of C. J. at page 498, § 610, to the effect that a master is not required to warn a servant regarding dangers arising from a change of conditions where the very nature of the servant's employment requires him to look out for dangers likely to arise from changing conditions. He cites 20 R. C. L. 193, § 99, and Conkey Co. v. Larsen, 173 Ind. 585, 91 N. E. 163, 29 L. R. A. (N. S.) 116-118, but he frankly concedes that among all of the cases that may be found in the books applying the rules announced in Corpus Juris and Ruling Case Law he has not been able to find a state of facts similar to the case at bar. The rules there announced have no application to the facts existing in this case. There were no changing conditions. If respondent's testimony is true, and in view of the verdict we

must accept it as so, respondent had attached the chain himself and had used it as so attached for some time. There is nothing to show that he had any reason to think there had been or would be a change. The employer made the change. He was bound to furnish to his employee reasonably safe appliances, and if he hitched the chain in such a manner as to be dangerous, he was negligent. The risk which respondent assumed was that incident to the employment and the use of reasonably safe appliances. We are satisfied that the evidence does not conclusively show respondent guilty of contributory negligence, but that such negligence was a question for the jury.

Second, are the physical facts such as to conclusively show that the accident was not the proximate result of appellant's negligence, and that the accident could not have happened from the cause ascribed by respondent. In discussing this proposition appellant seeks to demonstrate the physical impossibility by assuming that the chain was fastened around the front axle as appellant says it was, and that it could not have slipped out to the end of the axle near the wheel because the chain was fastened between the center bolt and the bolts holding the tongue. But it must not be assumed that it was so fastened. The evidence is conflicting. If it was fastened as appellant says, it was not where respondent says it was after the accident, but if it was where respondent says it was after the accident, appellant did not fasten it as he says he did. That is demonstrated by the physical facts; but who is telling the truth is for the jury to say. There are no conclusively proven facts of the physical condition from which this court can say that the accident could not have happened from the causes claimed by respondent.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and CAMPBELL and BROWN, JJ., concur.

POLLEY, J., dissents.