STARNES, Respondent v. STOFFERAHN, Appellant

(160 N.W.2d 421)

(File No. 10393.   Opinion filed July 24, 1968)

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for defendant and appellant.

**Davenport, Evans, Hurwitz & Smith**, Sioux Falls, for plaintiff and respondent.

ROBERTS, Judge.

This is an action for damages resulting from personal injuries sustained by plaintiff when he came into contact with the revolving power equipment connecting the mechanism of a self-unloading wagon and a tractor equipped with a power take-off.

Plaintiff in his complaint as amended during the trial alleges that on October 8, 1965, he together with defendants and four other farmers residing in the same neighborhood was engaged in a joint enterprise, that is, in the filling of silos upon their farms; that defendant, Ed H. Stofferahn, entered into an agreement with these persons whereby he leased a silage blower, a field cutter and four self-unloading wagons at an hourly rate of ten dollars; that defendant owner was negligent in failing to install shields or guards over the revolving shafts connecting the power take-off and the unloading mechanism of the wagons and in knowingly furnishing a self-unloading wagon which was in a dangerous condition by reason of a protruding set screw which was longer than necessary or usual in the universal joint at the wagon end of the drive .shaft; that while

plaintiff was assisting in unloading this wagon which was not properly equipped as set forth a gust of wind blew him against the revolving power equipment and his clothes became entangled thereon; and that he suffered serious injuries including the loss of his left arm.

The separate answer of defendant Ed H. Stofferahn admits occurrence of the accident, denies that he was negligent and as affirmative defenses alleges that negligence of the plaintiff either in whole or in part was the direct and proximate cause of his injuries, and that plaintiff voluntarily placing himself in a position of danger and peril assumed the risk of injury. During the trial the action against defendant Kenneth Stofferahn was dismissed on motion of the plaintiff.

After the parties rested defendant moved for a directed verdict. He stressed the grounds that the evidence failed to disclose any relationship between the parties which gave rise to a duty which was breached by defendant in connection with the ownership and the operation of the equipment involved in the action; that there was no evidence of any negligence on the part of the defendant which was not equally participated in by the plaintiff; and that the evidence established contributory negligence or an assumption of risk on the part of the defendant. The trial court denied the motion and submitted the case to the jury on the theory that one leasing equipment to another, and aware of the intended use thereof, is required to exercise reasonable care to ascertain if the equipment is in working order and safe for such use. The jury returned a verdict for the plaintiff in the amount of $27,329.63. The Court denied motion for judgment notwithstanding the verdict and defendant appealed.

Defendant had for eight or more years preceding the accident leased the implements mentioned to a group of farmers, including the plaintiff, who exchanged work in the filling of their silos. Payment was made by each of them on the basis of the time that the leased implements were used on his farm. The implements and equipment involved consisted of the self-unloading wagon and a farm type tractor. The tongue by which the

wagon was drawn was about six feet in length and was hitched to the draw bar at the rear of the tractor. The power take-off included a shaft projecting from the housing of the tractor which was twelve or more inches above the draw bar. The power take-off was coupled by a universal joint to a square drive shaft consisting of two sections of different dimensions telescoping into each other. The unloading mechanism of the wagon was coupled to the end of the drive shaft by a universal joint.

There was a cogwheel at each of the four corners at the bottom of the wagon box and over the two cogwheels on each side was fitted an endless chain. Between these chains were crossbars attached thereto which moved the contents of the wagon to the rear when the power take-off was engaged. When a load of silage was brought from the field, the wagon was positioned with the endgate above the hopper of the blower. The power to move the chains and crossbars was engaged by a lever at the rear of the wagon. There was a bracket at the upper left-hand corner of the front of each wagon. It was customary after unloading a wagon and before returning to the field for another load to disconnect the drive shaft and its connecting universal joints from the tractor and place it in the bracket.

When defendant purchased the wagons, each was equipped with a removable shield for use over the drive shaft and the universal joint connecting it and the unloading mechanism of the wagon. During the eight years that plaintiff and the farmers had operated the leased equipment the shields supplied by the manufacturer had not been used. The set screw mentioned which projected one half inch from the universal joint was a replacement. The original one was nearly flush with the universal joint.

Plaintiff testified that he was 50 years of age, had farmed since 1947 and had owned and operated tractors and power machinery ordinarily in use on farms. On the day of the accident plaintiff was engaged in hauling silage from a field to a silo on the farm of Dean Becker. Plaintiff recalls positioning his tractor and wagon for unloading, connecting the power shaft to the tractor, starting the power take-off, entering the wagon

428

over the front end for the purpose of pushing silage over the moving crossbars and leaving the wagon backwards with his left foot next to the power take-off equipment when the accident occurred.

The silos on the several farms were filled each year in about twelve days. Plaintiff estimated that he hauled each day about 14 or 15 loads of silage. "Q. Well, would it be fair to say that you used this particular wagon a fourth of the time over the eight years? A. It could have been, yes. * * * Q. So on one load, figuring from the silo out to the field and back to the silo again, you would handle that shaft twice, wouldn't you? A. Yes. * * * Q. So if you hauled 15 loads in one day with this wagon, you would have handled the shaft in that fashion 30 times, wouldn't you? Yes. * * * And this accident happened at about what time in the afternoon, Mr. Starnes? A. I think around four or four-thirty. Q. And by that time you had hauled how many loads? A. I suppose 10 or 12. * * * Q. This universal joint is completely visible to you, isn't it? A. Yes. If you were looking for it, yes. Q. That's right, if you were looking for it. If you were looking in that direction, you would see it, wouldn't you? A. Yes." Plaintiff admitted that he was aware that the exposed universal joint and drive shaft while in operation were dangerous and that injury could result if his clothing came in conatct with the revolving mechanism.

Dean Becker and his wife were at the scene of the accident the following morning. They testified that the drive shaft and connecting universal joints had been disconnected from the tractor, that there were shreds of clothing on the ground below the place "where the set screw would have been" and extending over a space of about 18 inches from the universal joint at the wagon end there was clothing tightly wrapped around the drive shaft.

██ The relation here was that of bailor and bailee. In general, it may be said that a bailor supplying for hire a chattel for the use of another is bound to exercise ordinary and reasonable care to make it safe for the use for which it is supplied. See

cases collected in a series of annotations in 12 A.L.R. 774, 61 A.L.R. 1337, 131 A.L.R. 845 and 46 A.L.R.2d 404. The applicable principles are thus stated in Restatement of Torts, § 388:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Comment f under the above section states:

"As pointed out in § 5, the phrase 'subject to liability' is used to indicate that the person whose conduct is in question is liable if, but only if, there also exist the other conditions necessary to liability. The person using the chattel may disable himself from bringing an action either by his contributory negligence in voluntarily using the chattel with knowledge of its dangerous condition, or by his contributory negligence in failing to make a proper inspection which would have disclosed the defect, or in failing to use the precautions obviously necessary to the safe use of the chattel."

The rule stated in Section 407, Torts, Restatement, results in the same liability as that stated in Section 388:

"A lessor who leases a chattel for the use of others, knowing or having reason to know that it is or is likely to be dangerous for the purpose for which it is to be used, is subject to liability as a supplier of the chattel."

■ The principal question presented is the sufficiency of the evidence to sustain the verdict. In the determination of this question, this court is required to consider the evidence in the light most favorable to the prevailing party and to give him the benefit of every reasonable inference that may be deduced therefrom.

■ The undisputed evidence is that plaintiff was familiar with the operation of farm machinery and with shafts and connections for the transmission of power to such machinery. He operated the leased equipment in the filling of silos during eight seasons. The take-off equipment with which plaintiff came in contact was in plain view. The danger of coming in contact with this mechanism when in operation was open and obvious.

It is stated in Breen v. Keen, 55 S.D. 150, 225 N.W. 223, that an employer is not bound to warn and instruct his employee as to defects and dangers which are open and obvious. A danger is considered as within the rule where it ought to have been apparent to the senses of a person of ordinary intelligence, or where it is as easily discernible by the employee as by the employer, or where it is discoverable in the exercise of that reasonable care which persons of ordinary intelligence may be expected to take for their own safety. See Gerke v. Zimmerman, 36 S.D. 359, 154 N.W. 812; Butler v. Kilpatrick, 38 S.D. 591, 162 N.W. 371; Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471; Stoner v. Eggers, 77 S.D. 395, 92 N.W.2d 528; Bartlett v. Gregg, 77 S.D. 406, 92 N.W.2d 654; Ecklund v. Barrick, 82 S.D. 280, 144 N.W.2d 605; Bunkers v. Mousel, 83 S.D. 45, 154 N.W.2d 208; Annot., 67 A.L.R.2d 1120.

Among the cases cited by plaintiff is that of Calkins v. Sandven, 256 Iowa 682, 129 N.W.2d 1, wherein it appears that a farm employee sustained injuries when he fell into the exposed mechanism of an unloading wagon. It was held that the em-

ployer had the duty to cover the wagon mechanism or warn the plaintiff employee. That case is clearly distinguishable. The injured employee had no experience in operating the self-loading wagon or one like it nor had he observed it in operation. Employer and employee cases recognize that an employer has the duty to warn and instruct immature and inexperienced employees of dangers incident to their work which are not obvious to them. 56 C.J.S. Master and Servant § 306; Shearman & Redfield on Negligence, Rev.Ed. § 242.

These principles with respect to suppliers and lenders are set forth in Restatement, Torts, § 390:

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

Plaintiff amended his complaint during the trial to allege negligence specifically with respect to the protruding set screw. He contends as before stated that defendant was guilty of breach of duty in leasing him the equipment without warning him of the set screw known to the defendant or discoverable by the exercise of reasonable care. There is no direct evidence that plaintiff's clothing was caught on the protruding set screw and then whipped around the drive shaft. Defendant contends that it is equally probable that plaintiff's clothing first became entangled with the power mechanism at the point where the wrapping of clothing around the drive shaft commenced and that since there is no preponderance of probability the burden of proof of causation has not been sustained. See Parham v. Dell Rapids Township, 80 S.D. 281, 122 N.W.2d 548. Under our view of the record, this question need not be decided.

Defendant cites and relies on the case of Ford v. Mt. Tom Sulphite Pulp Co., 172 Mass. 544, 52 N.E. 1065, 48 L.R.A. 96,

wherein plaintiff employee sought to recover for injuries caused by his being injured by a set screw fastening a collar near the end of a revolving shaft. It was held (opinion by Holmes, J.) that "where the danger is obviously great, as in the case of a revolving shaft, it is not necessary to give warning of elements which merely enhance the risk." If the case before us is distinguishable from the Ford case, as counsel contends, to the extent that plaintiff therein had charge of the equipment involved, oiled the shaft and bearing and should have informed himself of its construction, the situation is not materially different.

■ The drive shaft including the connecting universal joints is in evidence. The set screw which is a common device in coupling a drive shaft to a universal joint is clearly visible. It is not denied that the set screw was invisible when the power equipment was operated at full speed. Plaintiff having used the particular wagon a part of the time during the eight silo filling seasons admitted that he handled the equipment involved many times in a day when he removed it from or placed it in the bracket on the front of the wagon when connecting or disconnecting the same to or from the power take-off. A jury in a civil case determines only the existence or nonexistence of those facts which are in issue and as to which reasonable men might differ. Ulrikson v. Chicago, M., St. P. & P. Ry. Co., 64 S.D. 476, 268 N.W. 369; Truxes v. Kenco Enterprises, Inc., 80 S.D. 104, 119 N.W.2d 914. We do not believe nor can we deem it reasonable that plaintiff was not cognizant of the set screw. There was no emergency nor necessity of coming down off the wagon over the front end and near the power mechanism which would relieve the plaintiff from the exercise of reasonable care knowing that the power mechanism was in operation.

■ ■ Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause. Where the evidence establishes that the plaintiff was beyond reasonable dispute guilty of

negligence more than slight it is the duty of the court to direct a verdict for the defendant. Kundert v. B. F. Goodrich Co., 70 S.D. 464, 18 N.W.2d 786; Ford v. Robinson, supra. We conclude that the contributory negligence of the plaintiff under the circumstances was a matter of law more than slight.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant.

All the Judges concur.