# FOR PUBLICATION



FILED
Nov 05 2014, 6:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**C. DENNIS WEGNER**
C. Dennis Wegner & Associates, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**RAYMOND T. SEACH**
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RANDALL MANSON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1403-CT-145 |
| | ) | |
| MARK L. KEGLOVITS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David A. Shaheed, Judge
Cause No. 49D01-1102-CT-7083

**November 5, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal, Randall Manson appeals from the trial court's January 31, 2014 rulings that the law of South Dakota is applicable in this case and that he is not entitled to summary judgment with respect to his alleged contributory negligence. Manson raises two issues, which we revise and restate as:

I.      Whether the court properly concluded that the substantive law of South Dakota rather than Indiana is applicable in this cause; and

II.     Whether the court erred in denying Manson's cross-motion for summary judgment alleging he was not contributorily negligent as a matter of law under the law of South Dakota.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 14, 2010, Mark Keglovits, his wife Patricia, and Manson, each of whom resided in Indiana, loaded motorcycles into Mark's trailer, hitched the trailer to his Silverado truck, and left Mark's home on the south side of Indianapolis for the Sturgis Motorcycle Rally in Sturgis, South Dakota. Manson rode in the pickup truck with Mark and Patricia. Another couple, Pamela and Tony Craig, planned to follow Mark to South Dakota. Patricia fell asleep in the back seat of the truck, and Manson fell asleep in the front passenger seat. At approximately 4:30 a.m. on August 15, 2010, Mark fell asleep at the wheel causing the truck to leave the roadway on Interstate 90 in South Dakota and to roll.

On February 24, 2011, Manson filed a complaint for damages in Indiana against Mark in which he alleged that Mark failed to keep his vehicle under reasonable control, causing it to leave the roadway and overturn, and that as a result Manson suffered bodily injury. On November 9, 2012, Mark filed an answer in which he raised affirmative

defenses, alleging in part that the laws of South Dakota apply and that Manson was contributorily negligent under South Dakota law.

On August 1, 2013, Mark filed a motion for judicial notice of South Dakota law and for partial summary judgment requesting that the trial court find that South Dakota law applies to this case, along with a brief in support of the motion and a designation of evidence. In his brief, Mark argued that Manson promised to help him stay awake as he drove through the night to the motorcycle rally in Sturgis, South Dakota, that Manson broke his promise and fell asleep in the front passenger seat of the truck, and that Mark also fell asleep and his truck left the roadway resulting in a roll over.

Mark's designated evidence included his affidavit, the affidavit of his wife Patricia, and the deposition of Pamela Craig. In his affidavit, Mark stated in part that he "invited [Manson] to accompany [Mark and Patricia] on the trip so that [Manson] could help [Mark] with the driving responsibilities," that "[i]n the late evening hours of August 14, 2010, [Patricia] asked [Manson] to stay awake with [Mark] as [he] drove through the night and to help keep [him] awake, and [Manson] agreed to do so," that "[i]n the early morning hours of August 15, 2010, [Manson] fell asleep in the front passenger seat of [the] truck," and that Mark "briefly fell asleep causing [the] vehicle to leave the roadway and to roll." Appellant's Appendix at 38-39. Patricia stated in part in her affidavit that she asked Manson to help Mark "with the driving and to stay awake with him as he drove through the night, and [Manson] told [her] that he would do so" and that Manson "did not keep his word and fell asleep." Id. at 41.

3

On September 30, 2013, Manson filed a motion in opposition to Mark's August 1, 2013 motion and a cross-motion for partial summary judgment together with a memorandum in support of his motions and a designation of evidence. In his memorandum, Manson argued that South Dakota law did not apply, that Mark chose to concoct a theory of contributory negligence out of thin air, that the allegation that Manson breached a promise to Patricia is not an allegation of negligent conduct but an allegation that he failed to fulfill a contractual promise, and that if the law of contracts is involved there is no evidence that South Dakota contract law is any different from Indiana contract law. With respect to his cross-motion for summary judgment, Manson argued that the designated evidence shows as a matter of law that Mark cannot prove Manson acted unreasonably in failing to warn Mark to stay awake and thus that Mark is not entitled to proceed on a contributory negligence defense.

Manson's designated evidence included his affidavit and portions of the depositions of Mark and Pamela Craig. In his affidavit, Manson stated in part that "[a]t no time did [Mark] or Patricia [] ever say that they wanted [him] to accompany them so that [he] could help Mark [] with the driving responsibilities," that "[i]n previous years, [Manson] rode with Mr. and Mrs. Keglovits on two trips to Florida which were just as far as the trip to Sturgis," that Mark "drove his pickup truck with an old one-axle trailer the entire time on both trips," that Mark "did not want anyone else to drive," that Patricia had told him on the morning of August 14, 2010 before the trip that Mark "was going to drive the first 10 hours of the trip and then [Manson] was to drive," that "[n]othing else was said about driving responsibilities," that Patricia never asked him to stay awake during

4

the night time hours of the trip, and that he had asked Mark if he needed help and Mark replied "No, I told you, it's all downhill from now on." Id. at 107-108. Manson also stated that, after their final rest stop, Mark "was listening to a CD of some man reading a book," that Manson "was not interested in hearing the CD, so [he] began listening to music on [his] MP3 player," and that "[t]hat is the last thing [he] recall[ed] before waking up outside of the truck and lying on the ground in pain." Id. at 108-109.

During his deposition, Mark stated that Patricia had a conversation with Manson when they stopped for dinner at a restaurant and that Patricia had asked Manson to keep him awake and that Manson agreed. When asked what state the restaurant was in, Mark stated he was not sure. When asked "how long was it" between that dinner and the accident, Mark answered "I would say maybe eight hours." Id. at 134. When asked "it's fair to say this . . . conversation . . . that took place at a restaurant, was not in the state of South Dakota," Mark replied "No." Id. When asked if he remembered how long Manson had been asleep before the accident, Mark stated that he did not remember.

Following a hearing, the court entered two orders on January 31, 2014, the first of which granted Mark's motion for judicial notice and partial summary judgment finding the law of South Dakota to be applicable in this case, and the second of which denied Manson's cross-motion for summary judgment as to Mark's affirmative defense of contributory negligence. At Manson's request, the trial court certified its orders for interlocutory appeal and we accepted jurisdiction.

5

STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991).

A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this *prima facie* showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Comm'rs of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002).

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), trans. denied. Instead, we must consider each motion

6

separately to determine whether the moving party is entitled to judgment as a matter of law. Id. The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

## DISCUSSION

## I.

The first issue is whether the trial court properly concluded that South Dakota substantive law is applicable in this cause. Choosing the appropriate state substantive law is a decision to be made by the court of the state in which the action is pending. Ky. Nat. Ins. Co. v. Empire Fire & Marine Ins. Co., 919 N.E.2d 565, 575 (Ind. Ct. App. 2010). Accordingly, Indiana's choice of law rules apply to this case.

The parties cite to Hubbard Mfg. Co., Inc. v. Greeson, 515 N.E.2d 1071 (Ind. 1987), and Simon v. U.S., 805 N.E.2d 798 (Ind. 2004), and reach different results in applying Indiana's choice of law rules. Manson argues for the application of Indiana substantive law, while Mark argues, as the trial court concluded, that South Dakota substantive law governs.

As a preliminary matter, the court must determine whether the differences between the laws of the states are important enough to affect the outcome of the litigation. Simon, 805 N.E.2d at 805 (citing Hubbard, 515 N.E.2d at 1073). The parties agree there are

7

differences between the relevant laws of Indiana and South Dakota that may affect the outcome of the litigation in this case. Specifically, Indiana has adopted the Comparative Fault Act, found at Ind. Code §§ 34-51-2, which went into effect in 1985. Hockema v. J.S., 832 N.E.2d 537, 541-542 (Ind. Ct. App. 2005) (citing Control Techniques, Inc. v. Johnson, 762 N.E.2d 104, 107 (Ind. 2002)), reh'g denied, trans. denied. By adopting the Comparative Fault Act, the Indiana legislature rejected the common law doctrine of contributory negligence as a complete bar to recovery in negligence cases.[1] Id. (citing Walters v. Dean, 497 N.E.2d 247, 250 (Ind. Ct. App. 1986)). Comparative fault abolished the harsh common law rule that a plaintiff contributorily negligent to any degree was barred from all recovery, and liability under the Comparative Fault Act is to be apportioned among persons whose fault caused or contributed to causing the loss in proportion to their percentages of "fault" as found by the jury. Control Techniques, 762 N.E.2d at 109; Ind. Code § 34-51-2-8. In Indiana, "if a claimant is deemed to be more than fifty percent at fault, then the claimant is barred from recovery." Hockema, 832 N.E.2d at 542 (citing Ind. Code § 34-51-2-6 ("In an action based on fault . . . , the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages.")).

South Dakota has adopted a different approach. Under South Dakota law, "[w]hen a plaintiff is contributorily negligent, the plaintiff may still recover damages if that negligence was slight in comparison with the negligence of the defendant." Wood v. City of Crooks, 559 N.W.2d 558, 559-560 (S.D. 1997) (footnote omitted) (citing S.D.C.L. §

_____

[1] Indiana has retained the common law concept of contributory negligence for claims brought under the Indiana Medical Malpractice Act and the Indiana Tort Claims Act. Hockema, 832 N.E.2d at 542.

8

20-9-2 (the fact "that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff *was slight* in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence") (emphasis added))). "'Slight,' with regard to 'negligence,' was previously defined . . . as 'small of its kind or in amount; scanty; meager.'" Id. at 560-561 (holding that that plaintiff's contributory negligence was more than slight in comparison with the defendants' combined negligence and reversing the award of damages) (citing Nugent v. Quam, 152 N.W.2d 371, 380 (S.D. 1967) (discussing whether plaintiff's contributory negligence was more than slight in the following terms: "[It] was not small in amount or of little importance or insignificant or unsubstantial or inconsiderable, that is to say, it was not slight in comparison with the negligence of the defendant.")).

Because there is a difference between the relevant laws of Indiana and South Dakota that may affect the outcome of the litigation, we address the considerations set forth in Simon.

> If such a conflict exists, the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply. Under this rule, the court applies the substantive laws of [] "the state where the last event necessary to make an actor liable for the alleged wrong takes place." [Hubbard, 515 N.E.2d at 1073].

> This presumption is not conclusive, however. It may be overcome if the court is persuaded that "the place of the tort 'bears little connection' to this legal action." Id. at 1074.

> If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, "such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered."

> Id. at 1073-74 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)). These factors are not an exclusive list nor are they necessarily relevant in every case. All contacts "should be evaluated according to their relative importance to the particular issues being litigated." Id. at 1074. This evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs.

Simon, 805 N.E.2d at 805. The Court also noted that "[t]he presumption is that the law of the place of the tort applies because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts.'" Simon, 805 N.E.2d at 805 (citing Hubbard, 515 N.E.2d at 1073).

We first address where the last event necessary to make Mark liable occurred. See Simon, 805 N.E.2d at 805. This last event occurred in South Dakota when Mark fell asleep causing his vehicle to leave the roadway. Consequently, the presumption is that the traditional *lex loci delicti* rule will apply, namely, that South Dakota law would apply. See id. at 806. Next, we examine whether the place of the tort "bears little connection" to the legal action. See id.; Hubbard, 515 N.E.2d at 1074. People do not take the laws of their home state with them when they travel but are subject to the laws of the state in which they act. Simon, 805 N.E.2d at 807. The laws of the state where an automobile accident occurs govern the conduct of the driver at the time of the accident. See id. at 806-807 (noting that it was the conduct of the FAA and the air traffic controllers at issue and that, unlike in cases involving an automobile accident, the laws of the state where the plane crash at issue occurred did not govern the conduct of the parties at the time of the accident). Because Mark's conduct in operating his vehicle prior to the accident will be the focus of attention to determine liability, and that conduct was governed by the rules of

10

the road of the state in which the accident occurred, we conclude that the presumption that the *lex loci delicti* rule will apply and is not overcome. See Tompkins v. Isbell, 543 N.E.2d 680, 681-682 (Ind. Ct. App. 1989) (finding, in a vehicular collision case, that the last act necessary to make the defendant liable took place in Illinois, that the parties' conduct in operating their motor vehicles prior to the collision will be the focus of attention to determine liability, and that this conduct was governed by the rules of the road of the state of Illinois, and holding that the trial court correctly determined that the place of the tort had extensive connection with the legal action and thus the doctrine of *lex loci* retained vitality), trans. denied. Further, while Mark has alleged that Manson was contributorily negligent in failing to help keep him awake, the heart of this case is about a vehicular accident in South Dakota and the primary, and potentially only, negligent acts contributing to the accident include Mark falling asleep at the wheel and overcorrecting when attempting to stay on the roadway. Mark's contributory negligence claim does not alter our conclusion that the presumption that the *lex loci delicti* rule is applicable. Accordingly, we affirm the trial court's ruling that the law of South Dakota applies in this case.

II.

The next issue is whether the trial court erred in denying Manson's cross-motion for summary judgment. Manson argued in his motion that the designated evidence shows as a matter of law that Mark cannot prove Manson acted unreasonably in failing to warn Mark to stay awake and thus that Mark is not entitled to proceed on a contributory negligence defense. Manson argued that Mark makes no argument that South Dakota tort

11

law imposed a duty on Manson to stay awake. In his response to Manson's cross-motion for summary judgment, Mark argued that South Dakota law recognizes that passengers in vehicles are required to exercise all care required of an ordinarily prudent or reasonable person under like circumstances. Mark contended that South Dakota law also provides that under certain circumstances duties of care may be assumed.

On appeal, Manson contends that, "[e]ven if [he] was awake and acting as an ordinarily prudent and reasonable person, he could not have foreseen that [Mark] was going to doze off for a split second, start to go off the roadway, and then negligently overcorrect his steering and crash their vehicle." Appellant's Brief at 21. Manson argues it was "impossible under these circumstances for [him] to give an adequate warning of danger" and that Mark "acknowledges that there was nothing [Manson] could have done." Id. (citing Appellant's Appendix at 101 (indicating that, when asked during his deposition "[w]hat, if anything, could [Manson] have done in that split second," Mark answered "Nothing")). Manson further contends that Mark's argument that a juror could conclude that a reasonably prudent person would not have fallen asleep in a vehicle driven by a person who had been driving more than fifteen hours without sleep is a "speculative generalization" which is unsupported by the facts of this case. He notes that he had asked Mark if Mark wanted him to drive and Mark refused each time, and that Mark drove his truck the entire time on two previous trips to Florida and did not want anyone else to drive. Id. With respect to Patricia's statement that she asked him to help Mark stay awake, Manson asserts that "[a]ssuming for purposes of the summary judgment motion and this appeal only that Manson made such a promise, the

12

uncontroverted facts of this case prove that [Mark] did not justifiably rely to his detriment on Manson's alleged promise to keep him awake." Id. at 22. Manson further argues that Mark realized that Manson had fallen asleep and did not try to wake him and that Mark stated in his deposition that he was not relying on Manson to keep him awake "at that time." Id. at 23 (citing Appellant's Appendix at 101). Manson states that there is no competent evidence to support Mark's defense of contributory negligence and thus it is not proper for that issue to go to the jury.

Mark maintains that, based on the designated facts, a reasonable juror could conclude that Manson failed to exercise all care required of an ordinarily prudent or reasonable person under like circumstances and, specifically, "that it was unreasonable for Manson to promise to stay awake with [Mark] during the night time driving hours and to help keep [Mark] awake, then fail to do so" and that "a juror could conclude that a reasonably prudent person would not have fallen asleep in a vehicle driven by a person who had been driving more than fifteen hours without sleep, as the accident occurred at approximately 4:30 a.m." Appellee's Brief at 19-20. Mark further argues that a reasonable juror could conclude that Manson assumed an additional, gratuitous duty to actively attempt to keep Mark awake.

In his reply brief, Manson argues that Mark omits the fact that, in his deposition, he testified that "those strips that wake you up woke me up" and that he "tried to bring it up on the interstate and overcorrected . . . ." Appellant's Reply Brief at 6 (citing Appellant's Appendix at 102). Manson contends that the immediate cause of the accident was Mark's oversteering the truck, not dozing off for a split second, and that this is why

13

Mark stated there was nothing Manson could have done to prevent the accident. He argues that, short of grabbing the steering wheel away from Mark while he was oversteering the vehicle, there was absolutely nothing he could have done to prevent the truck from rolling down the embankment, and that any negligence on the part of Manson cannot be considered more than slight as a matter of law.

"Contributory negligence is conduct by the plaintiff that amounts to a 'breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.'" Parker v. Casa Del Rey-Rapid City, Inc., 641 N.W.2d 112, 117 (S.D. 2002) (quoting Starnes v. Stofferahn, 160 N.W.2d 421, 426 (S.D. 1968)). "Contributory negligence . . . [is] normally [a] question[ ] for a jury to decide unless 'the facts are not in dispute or of such a nature that reasonable men could not differ.'" Id. (citations omitted). Under South Dakota law, "[w]here plaintiff's contributory negligence is more than slight compared to defendant's negligence, plaintiff is barred from recovery." Harmon v. Washburn, 751 N.W.2d 297, 302 (S.D. 2008) (quoting Johnson v. Armfield, 672 N.W.2d 478, 481 (S.D. 2003)). As long as there is competent evidence to support the theory of contributory negligence, it is proper for the issue to go to the jury. Johnson, 672 N.W.2d at 481. As an affirmative defense, the defendant has the burden of proof in establishing contributory negligence. See id.

With respect to the alleged contributory negligence of a passenger in an automobile driven by another driver, the South Dakota Supreme Court has held: "The

14

care required of a passenger in an automobile driven by another is that required of an ordinarily prudent or reasonable person under like circumstances." Hanisch v. Body, 90 N.W.2d 924, 927 (S.D. 1958).

In another case, the South Dakota Supreme Court held:

> While the guest has no duty to direct or control the driver who has physical control of the car, but may trust him until it becomes clear that such trust is misplaced, there is a point where passive reliance upon the driver ends and the duty of a guest to exercise ordinary care for his own safety begins. *If the guest sees, or ought by due diligence to see, a danger not obvious to the driver, or sees that the driver is incompetent, careless, or not taking proper precautions, it is his duty to give some warning of danger, and a failure to do so constitutes contributory negligence. . . .* At precisely what point the duty arises . . . is largely a factual question to be properly decided by the jury upon the basis of the available facts and circumstances.

Beyer v. Cordell, 420 N.W.2d 767, 769-770 (S.D. 1988) (citing Hanisch, 90 N.W.2d at 927 (citing 5A Am. Jur. *Automobiles and Highway Traffic*, § 789)). In addition, South Dakota recognizes the common law doctrine of gratuitous duty, which is defined in Restatement (Second) of Torts § 323:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if,
>
> > (a)  his failure to exercise such care increases the risk of such harm, or
> >
> > (b)  the harm is suffered because of the other's reliance upon the undertaking.

Millea v. Erickson, 849 N.W.2d 272, 277 (S.D. 2014) (citing Andrushchenko v. Silchuk, 744 N.W.2d 850, 858 (S.D. 2008) (quoting Restatement (Second) of Torts § 323 (1965))).

15

We are unable to conclude as a matter of law that Manson was not contributorily negligent under South Dakota law. While Manson was asleep at the time of the accident and Mark was aware of this, the evidence most favorable to the nonmoving party, which a reasonable jury may find to be true, is that Manson was aware that Mark was not taking proper precautions in light of the number of hours he had driven with no sleep, and that Manson had agreed to help Mark stay awake. Keeping in mind that the point at which a duty of a passenger arises is largely a factual question, see Beyer, 420 N.W.2d at 769-770, we conclude that the jury should determine whether or not Manson was exercising the care required of an ordinarily prudent person under all of the circumstances presented. See Miller v. Baken Park, Inc., 178 N.W.2d 560, 560-561 (1970) ("We believe that in viewing the evidence in this record most favorably to the defendant it was for the jury to decide if Elaine Miller was contributorily negligent, i.e., if she acted as a reasonably prudent person would act under the circumstances and conditions then existing."). Accordingly, we affirm the court's order denying Manson's cross-motion for summary judgment.

CONCLUSION

For the foregoing reasons, we affirm the trial court's January 31, 2014 orders granting Mark's motion for judicial notice and partial summary judgment and denying Manson's cross-motion for summary judgment.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

16