GRANFLATEN, Respondent v. ROHDE, Appellant

(283 N. W. 153.)

(File No. 8087.   Opinion filed December 30, 1938.)

*Bailey, Voorhees, Woods & Bottum,* of Sioux Falls, for Appellant.

*L. E. Waggoner* and *R. C. Riter,* both of Sioux Falls, for Respondent.

ROBERTS, P. J. This action was commenced by Hulda Granflaten to recover for personal injuries sustained by her while riding as a guest in an automobile owned and driven by Harold P. Rohde. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon and an order overruling motion for new trial defendant appeals.

The principal claim of error advanced by defendant is that the evidence viewed in the light most favorable to the plaintiff was not sufficient to warrant the jury in finding that plaintiff's injuries were caused by the gross negligence or wilful and wanton misconduct of the defendant under the act commonly known as the guest statute (§ 801, Rev. Code 1919, as amended by chap. 147,

Laws 1933) which provides "that no person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The complaint alleges that the defendant was wilfully, wantonly and grossly negligent in that he turned to the left-hand side of the highway and collided with a car approaching from the opposite direction. The testimony discloses that the accident occurred on the night of November 11, 1935, between 9 and 10 o'-clock, while plaintiff and four guest passengers were driving in a northerly direction on highway No. 77 at a point about two miles south of Dell Rapids. Defendant was an experienced driver, was familiar with the highway and had driven it frequently. At the scene of the accident there was a gradual incline in the highway for a quarter of a mile. Defendant at the foot of this incline turned out to the left to pass a car going in the same direction and when in advance of this car saw another car approaching from the opposite direction. He attempted to avoid a collision by swerving to the right. Defendant had been driving between 65 and 70 miles per hour and testified that he was about 100 feet from the place of the collision when he first observed the car approaching from the opposite direction and that the left wheels of this car at the time of the collision were to the left of the center of the highway. The spokes in the left front wheel of defendant's car were sheared off causing the defendant to lose control of his car and it went into the ditch 50 or 100 feet north of the place of the collision.

Defendant admits that he drank liquor during the afternoon and evening preceding the accident, but denies that he was under the influence of liquor. As to the collision and the events immediately preceding it, plaintiff testified: "I came to Sioux Falls the day preceding Armistice day to visit Mrs. Hyland. I worked with her at Freese-Rohde Department Store of which the defendant was manager. I also became acquainted with Mabel Kvenvold and

Cora Stevens who were employed in this store. In the afternoon preceding the accident Mrs. Hyland, Mrs. Kvenvold and I went to the office of Mr. Rohde in the Minnehaha Block. We visited and had a cocktail of some kind. I think Mr. Rohde had two. While there I made the suggestion that I was going over to Mrs. Stevens'. The other girls decided to go with me and Mr. Rohde said that he would take us over. At the Stevens apartment we prepared dinner. Mr. Rohde had a drink before and again after dinner. I did not notice that he was intoxicated before we left town. After we got out on the Dell Rapids road he started to speed. I could not tell you how fast he was driving, but it was exceedingly fast. I said, 'Please, Mr. Rohde, are you trying to get rid of me in a hurry?' I just begged him several times not to drive so fast. Mrs. Stevens and Mrs. Kvenvold also protested about the speed. Mrs. Kvenvold asked Mr. Rohde if he was drunk. She said, 'Granflaten, I am just as afraid as you are. Don't pass cars going over hills, Mr. Rohde.' He was passing cars all the time, both on the straight and over hills. I would say that some of us was protesting constantly. I can't recall that he said anything but just laughed when I asked him if he was trying to get rid of me. I don't remember that he laughed at any time when other protests were made by any of the other girls. He did nothing with reference to decreasing the speed. I think he rather increased it at times. I could not say how many times he was over on the wrong side of the black line. It was more than once. I think we all asked him not to pass cars because there was so much heavy traffic. We all asked him not to pass cars on the wrong side of the road because he was passing cars so close. I don't have any recollection of having struck the other car or of going into the ditch."

Defendant on cross examination testified: "I tried to pass a car going up hill but didn't consider it dangerous at that particular point. It turned out that way. My car was not over the black line farther back. I don't recall Mrs. Stevens telling me if I didn't quit they would get out and walk. I heard no remark of that kind. She didn't say anything like that that I heard. I don't think I passed other cars on other hills on that same trip. Mrs. Kvenvold remarked once about passing cars going over hills. As we passed a car just before hitting the Duea car she made a re-

mark, not in the nature of a protest but as anyone would warn a driver if you are sitting next to him—'You are passing on a hill.' Yes, I went on past, regardless of the warning. There wasn't anything else to do at that time. I don't claim it was the fault of the Duea car that the accident occurred. They were close to the center but still on their side of the road. I don't claim they were speeding. I don't think they were going as fast as I was. I admit that the accident was my fault to the extent that I was on the wrong side of the road. I don't claim anybody else did anything that caused the accident. On direct examination defendant testified: "I decided to go around as there seemed to be plenty of room to pass, and proceeded to do so. The road was just at the start of the grade on that first hill on the black top paving at the south end. I just cleared past that car and a car came from the north. I tried to go back to my side of the road as rapidly as possible but could not clear. I was approximately 100 feet from the place of the collision when I first saw this car come over the hill, and was just completing passing this car."

Negligence may be defined as the failure to exercise ordinary care under the circumstances. Ordinary care in the abstract is such care under the same or similar circumstances as an ordinarily prudent or reasonable person would exercise. It is commensurate with existing and surrounding hazards. The greater the danger, the greater the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts to ordinary care in view of the situation and circumstances. The guest statute subjects the owner or driver of an automobile to liability for injuries to a gratuitous guest in case of an accident only if the accident was caused by gross negligence or wilful and wanton misconduct of the owner or driver. The conduct within the meaning of the statute must be something more than negligence or failure to exercise ordinary care. In Melby v. Anderson, 64 S. D. 249, 266 N. W. 135, the meaning of "gross negligence or wilful and wanton misconduct" is expressed in the following language: "The words 'gross negligence' are, for practical purposes, substantially synonymous with the phrase 'wilful and wanton misconduct.' Wilful and wanton misconduct (and gross negligence as it is employed in this statute) means something more than negligence. They describe conduct

which transcends negligence and is different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

■ It is the contention of the defendant that the trial court erred in denying his motions for a directed verdict and for judgment notwithstanding the verdict for the reason that his conduct did not amount to gross negligence or wilful and wanton misconduct, the standard fixed by the legislature. In determining whether or not the court erred in submitting to the jury the question whether the conduct of the defendant constituted gross negligence or wilful and wanton misconduct the rule is the same as applies in negligence cases. If reasonable men having before them all the evidence on the question could not differ as to whether or not the exhibited conduct conforms to the standard established by the legislature, then the question becomes one for the court. But if under the proven or admitted facts different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury.

■■ It is contended that the alleged wilful and wanton misconduct arose from the attempt of the defendant to pass the car ahead in a place of extraordinary danger; that defendant must have realized the probability and danger of meeting a car from the opposite direction; and that when such departure from careful driving is considered with the elements of excessive speed, prior warnings and continuous negligence the jury was warranted in finding defendant guilty of wilful and wanton misconduct. The evidence would justify a finding that defendant was negligent. The judgment, however, can be sustained only by proof of something more than negligence. It is impossible to state precisely the line of demarcation between ordinary negligence and gross negligence

or wilful and wanton misconduct, and we are aware of the danger of too much refinement in an attempt to draw the line too near to due care. We pointed out in the case of Melby v. Anderson, supra, that the term "gross negligence" in the light of the context of the statute and its construction by the Michigan court before its adoption by the legislature of this State is substantially equivalent to wilful and wanton misconduct and that the difference between negligence and wilful and wanton misconduct is a difference in kind and not merely a difference in degree. A mere error of judgment as to the result of doing an act or the omission of an act, having no evil purpose or intent or consciousness of probable injury, may constitute negligence. Where a driver intentionally does something in the operation of his car which he should not have done or there is an intentional failure to do something which he should have done under circumstances disclosing a conscious realization that injury is a probable (as distinguished from a possible) result of such conduct, the act ceases to be merely negligent and becomes wilful and wanton; it involves the affirmative elements of consciousness of one's conduct and not merely the negative element of negligence.

In Fink v. Dasier, 273 Mich. 416, 263 N. W. 412, the defendant driving 70 miles per hour at night despite protests of his guest failed to see a car preceding him in time to apply brakes or turn to the left. The court said: "It must also be held as a matter of law that at most it was only ordinary negligence for defendant, who was very familiar with this highway, to drive his automobile at the rate of 70 miles per hour under the circumstances surrounding him as he approached the point of accident and before he was aware of the presence of the other car preceding him down the hill. * * * 'The driver of an automobile is not at his peril required to comply with the requests of a guest relative to speed, nor does noncompliance in and of itself evidence willfulness or wantonness.' "

In Holmes v. Wesler, 274 Mich. 655, 265 N. W. 492, defendant approaching a curve at a speed of between 70 and 75 miles per hour drove off the highway, came back on the highway, began to swerve and collided with a telephone pole. The court concluded: "It is not claimed, nor is there any tesimony tending to show, that defendant intentionally drove too near to and

off the right-hand side of the paved portion of the highway. It may be conceded that defendant was driving his car carelessly and that this regrettable accident would not have occurred had defendant not carelessly driven his automobile off the right-hand side of the pavement; but in doing so he was guilty only of ordinary negligence, not of gross negligence, or wanton or willful misconduct. When the car was returned to the paved portion of the highway, it was wholly out of defendant's control, and the accident was then unavoidable. It was caused by ordinary negligence nothing more."

In Cole v. Morse, 85 N. H. 214, 155 A. 694, there was evidence that defendant at the foot of a hill overtook another car and notwithstanding the protest of the plaintiff attempted to pass it. The driver of the other car increased his speed. Although there was opportunity to drive in behind the other car the defendant persisted in his attempt to pass and kept abreast of the other car to the top of the hill where he collided with a car approaching from the opposite direction. The court recognized that there was a heedless and palpable violation of a legal duty respecting the rights of the plaintiff which it characterized as reckless, but expressed the view that the conduct of defendant was not wanton and wilful. The court said: "The top of a hill of a two-way thoroughfare subject to heavy traffic which precludes the sight of an on-coming automobile should be the equivalent of a red light to a motorist traveling in the line of opposing traffic. Driving a powerful machine at great speed into a space where the driver cannot see, and where obstacles are reasonably to be expected, falls but little short of such a reckless disregard of the probable consequences as would be accounted wanton and willful conduct."

In Melby v. Anderson, supra, the defendant had been driving against the sun for a half a mile without an accident, though momentarily blinded at times by the sun, and traveling at the rate of 30 or 35 miles per hour was blinded for an interval of 100 feet before colliding with a car approaching from the opposite direction. We held that the evidence did not indicate a realization on the part of the defendant that his conduct would in all probability bring injury to his guest and was insufficient to take the case to the jury on the question of defendant's wilful and wanton misconduct.

Defendant was unaware of the danger from the approaching car until it was too late to avoid a collision and while defendant knew or should have known that an accident under the circumstances was possible, plaintiff has not established a case within the rule announced by this court in Melby v. Anderson, supra. It is not claimed that defendant after he saw the approaching car could have avoided the accident by driving back behind the car proceeding in the same direction; that he persisted in passing after he became aware of the danger. See Sanford v. Grady, 1 Cal. App. 2d 365, 36 P. 2d 652, 653, 37 P. 2d 475. The present circumstances are distinguishable from the case of Martins v. Kueter, 65 S. D. 384, 274 N. W. 497, relied upon by the plaintiff. In addition to the fact that defendant knew that he was approaching a turn in the highway and was aware of the probable consequences of attempting to make the turn at a high and dangerous rate of speed, there was an element of an affirmatively reckless state of mind; the defendant told his guest passengers that he was taking them for a "thrill ride."

■ We conclude that the evidence was not sufficient to take the case to the jury. The judgment appealed from, therefore, is reversed and the trial court is directed to enter the judgment for the defendant.

RUDOLPH and SMITH, JJ., concur.

POLLEY, J. (dissenting). I am not able to concur in the majority opinion in this case. The defendant was driving in the night time over a smooth paved road. It was on the evening of a national holiday. The traffic both ways was very heavy. While the country over which defendant was driving was comparatively level, there was some up and down hill. Defendant was driving at an excessive rate of speed—60 to 70 miles per hour. He was meeting cars coming from the opposite direction at the rate of about one car every minute; not only that, he was overtaking and passing cars going in the same direction he was going, and passing them whether they were going uphill or downhill. Defendant tried to pass a car going in the same direction he was going while it was approaching the brow of a hill. As he was in the act of passing this car, and while he was in a position where he could not possibly avoid a collision if a car should come from the opposite

direction, another car did come over the top of the hill and collided with defendant's car. Under these circumstances, was the defendant guilty of "gross negligence or wilful and wanton misconduct"? I think that under what this court said in both the Melby Case, Melby v. Anderson, 64 S. D. 249, 266 N. W. 135 and the Martins Case, Martins v. Kueter, 65 S. D. 384, 274 N. W. 497 defendant was guilty of gross negligence and wilful and wanton misconduct. One of the cardinal rules of the road is, under no circumstances, to pass another car while approaching the top of a hill. With as much traffic on the road as there was at the time of the accident it was all but absolutely certain that defendant would meet another, and before he reached the top of the hill, and before he could get back onto his own side of the road. In passing the other car as he was doing, he was committing a deliberate and intentional wrong which amounted to "wilful and wanton misconduct."

In the Melby Case we held that while the driver of the car in which plaintiff was riding was negligent, he was not sufficiently negligent to amount to wilful and wanton misconduct and held that Melby was not entitled to recover. In the Martins Case, we held that in attempting to round the particular turn in the road at the rate of 70 miles per hour, the driver was guilty of negligence that amounted to wilful and wanton misconduct and held that plaintiff was entitled to recover.

In this case the defendant was making a practice of passing cars while going uphill at a rate of speed when it was highly probable that he would meet another car coming from the opposite direction and while his car was in such a position that a collision could not possibly be avoided. In doing this defendant was committing a wilful and intentional wrong. This was such a degree of negligence that it amounted to wilful and wanton misconduct and plaintiff is entitled to recover; this is in accordance with our holding in both the Melby and Martins Cases.

WARREN, J. (dissenting). The majority opinion attempts to distinguish the case of Martins v. Kueter, 65 S. D. 384, 274 N. W. 497, from the facts in the case before us by stating that the defendant in that case knew that he was approaching a turn in the highway and was aware of the probable consequences in

attempting to make the turn at a high and dangerous rate of speed. I am not persuaded that that element of recklessness is any greater than the knowledge the defendant in the present case had, knowing that something must happen if he met a car approaching from the opposite direction when attempting to pass a car going the same direction, and his conduct of absolute indifference to the warning of his guests is no less than the statement by the defendant in the Martins v. Kueter Case, that he was taking them for a thrill ride. The facts and circumstances of the instant case show clearly that this defendant was guilty of "gross negligence or wilful and wanton misconduct."

That the defendant drove over a busy highway at night at an extremely high rate of speed; that he continually overtook and passed other cars, sometimes while going over hills; that he had previous knowledge of the hilly nature of the highway and the dense oncoming traffic; and that he was warned several times by the passengers in the car, leave no room for doubt in my mind that this defendant "intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done, under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff." Measured by any standard of conduct whatever, this defendant was clearly guilty of actionable negligence under the statutes of this state and the decisions of this court interpreting them.