## PETERSON v. DENEVAN.

No. 13963.

United States Court of Appeals
Eighth Circuit.

Nov. 3, 1949.

M. T. Woods, Sioux Falls, S. D., and Harry J. Eggen, DeSmet, S. D. (H. L. Fuller, J. B. Shultz and T. M. Bailey, Jr., Sioux Falls, S. D., were with them on the brief) for appellant.

Gale B. Braithwaite, Sioux Falls, S. D. (Joe W. Cadwell, Sioux Falls, S. D., was with him on the brief) for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment which dismissed appellant's action on its merits. The parties will be referred to as they appeared in the trial court. The action was to recover damages for the wrongful death of plaintiff's decedent as the result of an automobile accident. Plaintiff is the special administrator of the estate of Marilyn Peterson, deceased, who at the time of

her death was fifteen years of age and resided with her parents in South Dakota.

It was alleged in plaintiff's complaint that decedent was riding as a guest in an automobile operated by defendant; that defendant operated the automobile in such a manner that it swerved off the highway and collided with a telephone pole, so injuring plaintiff's decedent that she died as a result thereof; that defendant operated the automobile at such a high and dangerous rate of speed that he was unable to negotiate a curve or turn in the highway with which he was familiar, and that his conduct in driving at such a speed was willful and wanton and without regard for the safety of plaintiff's decedent. It was specifically alleged that the action was brought under and pursuant to the provisions of Chapter 37.22 of the South Dakota Code of 1939 and acts amendatory thereof.

Defendant, a young man eighteen years old, answered by his guardian ad litem, denying any willful or wanton misconduct, and denied that the parents of the decedent were damaged by her death. Other allegations of the answer are not deemed material.

The determining issue actually tried was whether or not plaintiff's proof established willful and wanton misconduct on the part of the defendant. The case was tried to the court without a jury and the court decided this issue in favor of the defendant and entered findings of fact and conclusions of law and judgment in favor of the defendant.

On this appeal the only issue is whether the evidence was such as to compel a finding that defendant was guilty of willful and wanton misconduct in operating the automobile causing the accident, within the purview of the South Dakota Guest Statute, and it is contended that the court's finding of fact to the effect that "said accident was not caused by the willful and wanton misconduct of the defendant Leonard Denevan" was not sustained by the evidence and was clearly erroneous.

The South Dakota Guest Statute, so far as here pertinent, reads as follows: "44.-0362. Guest in automobile can recover damages only for willful and wanton misconduct. No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

The action was tried to the court on its merits, and the court having found the issues in favor of the defendant we must take that view of the evidence which is most favorable to him and we must assume that all conflicts in the evidence were resolved by the court in favor of the prevailing party. The findings are presumptively correct and on appeal "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.; Federal Savings & Loan Ins. Corp. v. First Natl. Bank, 8 Cir., 164 F.2d 929; Sandlin v. Johnson, 8 Cir., 152 F.2d 8. The question of negligence, of whatever degree or description, is ordinarily one of fact to be determined by the jury in cases tried to a jury, and by the court in cases tried to the court without a jury. It becomes a question of law only when the facts are undisputed, or if in dispute are of such potency that all reasonable men must reach the same conclusion. Merritt v. Interstate Transit Lines, 8 Cir., 171 F.2d 605, and cases there cited.

The action is bottomed on the South Dakota statute and hence plaintiff's right to recovery depends upon the provisions of that statute as construed by the Supreme Court of South Dakota. The statute has been the subject of construction in a number of South Dakota cases. Melby v. Anderson, 64 S.D. 249, 266 N.W. 135; Mar-

tins v. Kueter, 65 S.D. 384, 274 N.W. 497; Granflaten v. Rohde, 66 S.D. 335, 283 N.W. 153; Elfert v. Witt, S.D., 38 N.W.2d 445. In Melby v. Anderson, supra [64 S.D. 249, 266 N.W. 137], the court among other things, said, "That to create liability under the statute there must be (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) omission to use such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another."

The court after observing that the statute was taken from the law of Michigan and should be construed and interpreted in the light of the Michigan decisions relating to it before the South Dakota legislature adopted it, observed that, "Willful and wanton misconduct (and gross negligence. as it is employed in this statute) means something more than negligence. They describe conduct which transcends negligence and is different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

In its later decisions the Supreme Court of South Dakota has adhered to the construction placed upon this act by its decision in Melby v. Anderson, supra. Thus, in the recent case of Elfert v. Witt, supra, the court quoted from that case and reaffirmed its interpretation of the statute. In the Elfert case the jury returned a verdict for the defendant and it. was claimed that the evidence was insufficient to sustain the verdict. The court, observing that the evidence was in conflict as to the speed of the automobile and the condition of the highway, said that [38 N.W.2d 447] "The jury was not required to accept plaintiff's version as to how the accident occurred." The Supreme Court of South Dakota could not, of course, concern itself with the wisdom of this law. The statute manifestly relieves the owners or operators of motor vehicles of the common law liability to their guests for injuries or death. Under this act the owner or operator of an automobile is liable only for such injuries or death as is caused by his willful or wanton misconduct, or willful or wanton disregard of the rights or safety of others. Willful or wanton misconduct under this statute, as interpreted by the Supreme Court of South Dakota means intentionally doing something in the operation of the automobile which should not have been done, or intentionally failing to do something which should have been done under the circumstances, indicating knowledge that an injury to the guest is probable as distinguished from possible.

We are impressed, as was also the trial court, with the thought that the defendant was guilty of negligence in driving this car at a reckless rate of speed and that this accident was possibly the result of the recklessness of the defendant. But considering the evidence in a light most favorable to the defendant and resolving all conflicts in his favor, it is observed that he testified that he estimated the speed of the car as he rounded the curve at about 45 miles an hour, which expert testimony indicated would be a rate of speed at which he might safely have made the curve in the highway. He testified that he might have been going faster than 45 miles an hour without realizing it. Prior to the time of the accident he had driven old cars but had never before driven any of the new cars equipped with high compression engine. This car was a new Kaiser automobile. There were four young people in the car. In the front seat were the defendant and Betty Macheel, while in the back seat were August Macheel and Marilyn Peterson. They were all good friends. The two young men had by arrangement picked the girls up at Huron,

South Dakota, for the purpose of driving them to DeSmet, South Dakota, some 35 miles east of Huron. Defendant had not driven the car to Huron but took over the driving at Huron because of blisters on August Macheel's hands. They left the State Fair Grounds at Huron about midnight, drove east on Highway No. 14 to a dance hall, remaining there some 45 minutes, after which they drove on east to Cavour, the first town east of Huron. They remained there for some two and a half hours and started to return to Huron to get a lunch and it was while on this trip toward Huron that the accident occurred.

The highway was a hard surface road and in good condition. No one made any protest about the speed of the car although it is clear that prior to approaching the curve it was being driven at a very high rate of speed on the straightaway but this speed was reduced as the curve was approached. The defendant, among things, testified as follows: "The people in the car were all my friends. I testified to my speed as I approached the curve. I also testified that I might have been mistaken and it might have been higher than I realized. Whatever that speed was I did not realize that it might not be safe for me to make the curve at that speed. I did not intend to have an accident that night. Regardless of whether or not I was correct in my conclusions, I did at all times think that I was driving safely."

He also testified that as he approached the curve he saw another car coming from the opposite direction and that as they both entered the curve the lights interfered with his vision and he could not see the concrete clearly and that the other car started to edge over to his side of the road, with the result that he went over a little farther to give it room and then he felt his car going off the concrete. He testified as follows: "I was on my side of the pavement at that time. The other car didn't seem to stay on its own side of the pavement. It seemed like it was crowding my side. I was trying to avoid it. I just kept getting farther over to the right to allow enough room for the other car to pass until I felt the car going into the ditch."

The evidence, particularly as to the speed at which the car was being operated, was in dispute and the court might have found that it was being operated at a very high rate of speed. But in face of the testimony of the defendant, which the court had a right to credit, it can scarcely be said that the testimony was such that "it can be said that he (the operator) consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

The judgment appealed from is therefore affirmed.