## 20718

Julian Wayne FOREMAN, Appellant, v. The ATLANTIC LAND CORPORATION and the South Carolina Electric and Gas Company, Respondents. Rebecca S. TALBOTT, as Administratrix of the Estate of Clay P. Talbott, Appellant, v. The ATLANTIC LAND CORPORATION and the South Carolina Electric and Gas Company, Respondents.

(245 S. E. (2d) 609)

*Grimball, Cabaniss, Vaughan & Guerard,* Charleston, *for appellants Foreman* and *Talbott.*

*David S. Goldberg,* Charleston, *for appellant Foreman.*

*Alton L. Ogier,* Charleston, *for appellant Talbott.*

*Stuckey & Wise,* Charleston, *for respondent Atlantic Land Corp.*

*Legare, Hare & Smith,* Charleston, *for respondent S. C. Elec. & Gas. Co.*

June 20, 1978.

NESS, Justice:

This is an action by the Estate of Clay P. Talbott and Julian W. Foreman for injuries received while the two men were employed by American Boring & Tunnelling Company (BorTunCo.). A crane operated by Harry M. Hutson, allegedly an employee of respondent Atlantic Land Corporation (ALC), came into contact with an SCE&G power line. The electric shock was transmitted via the crane to Talbott and Foreman who were standing on the ground nearby.

The trial court granted SCE&G's and ALC's motions for summary judgment. We affirm as to SCE&G and reverse as to ALC.

## I. Summary Judgment for SCE&G

The actions against SCE&G are based on the theory that it was negligent in the maintenance of the high voltage lines involved in the accident. We conclude that all the facts and reasonable inferences therefrom indicate that SCE&G was not negligent as a matter of law.

■ It is uncontroverted that the wire height at the accident scene was 29 feet, above the minimum of 22 feet set by the National Electric Safety Code. While this Code has no legislative sanction, it is difficult to conceive a better test of care than compliance with its provisions. *Nelson v. Iowa-Illinois Gas and Electric Company,* 160 N. W. (2d) 448 (Iowa 1968); see also *Dillard v. Southwestern Public Service Company,* 73 N. M. 40, 385 P. (2d) 564 (1963); *Virginia Electric and Power Company v. McCleese,* 206 Va. 127, 141 S. E. (2d) 755 (1965).

Appellants' assertion that SCE&G was negligent in failing to insulate the line does not create a jury issue. Where a line is isolated at a sufficient height in compliance with safety codes, a power company is not negligent for failing to further insulate it. See *Trimyer v. Norfolk Tallow Company, Inc.,* 192 Va. 776, 66 S. E. (2d) 441 (1951) and *Arkansas Power & Light Company v. Lum, et al.,* 222 Ark. 678, 262 S. W. (2d) 920 (1953).

Appellants contend SCE&G was negligent in failing to post warning signs in the area. We disagree. The existence of the power lines posed an obvious danger and the crane operator, Hutson, stated he knew he was working under them. (Tr. p. 122). Where the lines are sufficiently elevated and the crane operator is aware of the danger involved, warning signs would serve no purpose. See *Boudreaux v. Louisiana Power & Light Company,* 16 La. App. 664, 135 So. 90 (1931).

SCE&G was entitled to anticipate the exercise of due care by those working in the vicinity of the lines. It was not reasonably foreseeable that workmen would needlessly place and load a flatbed truck directly under a power line. There was no necessity for the crane to be operated beneath the line. As stated in *Burns, et al. v. Carolina Power & Light Company,* 193 F. (2d) 525, 529 (4th Cir. 1951):

"The power line was constructed and maintained in accordance with the requirements of the State. The power Company had no knowledge, information or reason to believe that employees of the brick yard would move a crane under their transmission line and raise this boom without bothering to look to see where they were working or what would be the result."

We hold where the injury complained of is not reasonably foreseeable in the exercise of due care, there is no liability. *Woody v. South Carolina Power Com-*

*pany,* 202 S. C. 73, 24 S. E. (2d) 121 (1943) ; *Weisser v. Otter Tail Power Company,* 318 F. (2d) 375 (8th Cir. 1963) ; see also cases annotated at 69 A. L. R. (2d) 102. The following language from *Hall v. Lorain-Medina Rural Electric Co-operative, Inc.,* 104 Ohio App. 278, 148 N. E. (2d) 232, 236 (1957) is apposite:

"We think that the law does not require a person who maintains a high-voltage electric wire . . . to anticipate at his peril every possible circumstance under which some person might make contact with this wire." See also *Nordgren v. Western Colorado Power Company,* 167 Colo. 421, 448 P. (2d) 643 (1968) ; *Donovan v. Union Electric Company,* 454 S. W. (2d) 623 (Mo. App. 1970) ; *Gunn v. Edison Sault Electric Company,* 24 Mich. App. 43, 179 N. W. (2d) 680 (1970).

In *Larman v. Kodiak Electric Association,* 514 P. (2d) 1275 (Alaska 1973), a crane operator was electrocuted when the crane boom came into close proximity with a power line. The line was uninsulated but was above the minimum established by applicable safety codes. This incident was in an area involving a moderate amount of construction activity where similar crane accidents had occurred in the past.

On these facts, which are closely parallel to those before us, the Supreme Court of Alaska concluded the power company was free of negligence. The Court stated:

"Neither the previous accidents nor awareness of general activity would have led KEA to foresee Larman's maneuvering a crane into 31-foot-high power lines. We have been directed to no cases which require an electric company to be an insurer." 514 P. (2d) at 1280.

The facts of this case support the trial court's conclusion that SCE&G was not negligent as a matter of law. Summary judgment was properly granted.

## II. Summary Judgment for ALC

The critical issue is who had control of Harry Hutson, the crane operator, at the time of the accident. If Hutson was controlled by BorTunCo, ALC would not be liable for his acts of negligence; however, if ALC controlled Hutson, liability would follow on the basis of *respondeat superior*. We conclude a factual issue existed as to the control of Hutson.

At the time of the accident, Hutson was on the payroll of ALC, and was associated with BorTunCo by virtue of a lease arrangement with ALC. He was supervised by an ALC employee who occasionally visited him at the job site, and also received general instructions from an employee of Bor-TunCo. Hutson stated he had been employed by ALC for three months and considered himself in its employ at the time of the accident. Subsequently, Hutson was put on the payroll at BorTunCo.

Recently, in *Parker, Administratrix v. Williams & Madjanik, Inc., et al.,* S. C., 239 S. E. (2d) 487, 489, this Court stated in regard to a loaned employee:

"While it is clear an employer may lend his employee to another so as to be relieved from liability for an injury caused by the negligence of the employee in performing work for the other . . ., it is equally true that an employer may direct his employee to go upon the premises of another and perform work there under the general supervision of the other person without severing the employment relation between the employer and the employee." See also *Lewis v. Barnhill,* 267 N. C. 457, 148 S. E. (2d) 536 (1966).

Whether ALC or BorTunCo controlled the crane operator was a jury issue. We reverse that portion of the trial court's order granting summary judgment to ALC and remand for trial.

Affirmed in part; reversed in part.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.