Roger LOVELL; Earl Lovell and
Blanche Lovell, husband and
wife, Plaintiffs and Appellees,

v.

OAHE ELECTRIC COOPERATIVE,
Defendant and Appellant.

No. 14497.

Supreme Court of South Dakota.

Argued Nov. 27, 1984.

Decided Feb. 12, 1986.

Rehearing Denied March 20, 1986.

FOSHEIM, Chief Justice (on reassignment).

Defendant Oahe Electric Cooperative (Coop) appeals from a judgment rendered against it in favor of Plaintiffs Earl, Blanche, and Roger Lovell (Lovells). We reverse.

In May, 1980, Coop constructed a high voltage line across Lovell's farm. This line was twenty-seven feet, two inches above the ground and set off about five or six feet east of an existing well. In October, 1981, Earl and Roger were pulling a pipe and rod from the well when it came in contact with the transmission line. Earl and Roger were holding the pipe when it touched the line and received severe burns. A jury awarded Lovells $115,902 for personal injuries and property damage.

Coop initially contends that since it complied with the minimum standards of the National Electrical Safety Code (NESC), it could not be negligent as a matter of law.[1] Coop's experts testified that all requirements of the NESC code were complied with during construction of the transmission lines. Lovell's expert testimony indicated that Coop violated three separate sections of the NESC[2] and that alternatives in construction of the lines were available which would have complied with the safety purposes of the NESC.

Coop's argument, that if it did not violate any standards of the NESC when it constructed the electric line then there is no negligence on its part, is less than correct. As a general rule "where a particu-

Thomas M. Maher of Maher, Carter & Bode, Pierre, for plaintiffs and appellees.

E.D. Mayer of Riter, Mayer, Hofer & Riter, Pierre, and Leo P. Flynn, Milbank, for defendant and appellant.

1. SDCL 47–21–75 provides:
Construction of electric lines by a cooperative shall, as a minimum requirement, comply with the standards of the national electrical safety code in effect at the time of such construction;
. . . .

2. The portions of the National Electrical Safety Code Lovells' experts claim Coop violated include:
Rule 200. Purpose of Rules
The purpose of these rules is the practical safeguarding of persons from hazards arising from the installation, operation, or maintenance of overhead supply and communication lines and their associated equipment. They contain provisions considered necessary for the safety of employees and the public. They are not intended as a design specification or an instruction manual. Construction should be made in accordance with accepted good practice for the given local conditions in all particulars not specified in the rules.
Rule 210. Design and Construction
All electric supply and communication lines and equipment shall be of suitable design and construction for the service and conditions under which they are to be operated.
Rule 211. Installation and Maintenance
All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life as far as is practical.

lar statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." *Weeks v. Prostrollo Sons, Inc.*, 84 S.D. 243, 248, 169 N.W.2d 725, 728–29 (1969) (quoting *Richardson v. Gregory*, 281 F.2d 626 (D.C.Cir.1960)). This is true provided the violation is the proximate cause of injury to the person for whose protection the statute or ordinance was enacted. *Alley v. Siepman*, 87 S.D. 670, 674, 214 N.W.2d 7, 9 (1974). The distinction between mere "evidence of negligence" and "negligence per se" is very marked in that with the former there must be an adjudication as to whether or not the statute violation constitutes negligence whereas in the latter, negligence necessarily follows proof of the violation. *Weeks*, 84 S.D. at 249, 169 N.W.2d at 729 (quoting *Kelly v. Huber Baking Co.*, 145 Md. 321, 335–40, 125 A. 782, 788 (1924)).

In *Albers v. Ottenbacher*, 79 S.D. 637, 116 N.W.2d 529 (1962), we said:

Negligence is the breach of a legal duty. It is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care or skill not to injure another, or is imposed by a statute designed for the benefit of a class of persons which included the one claiming to have been injured as the result of nonperformance of the statutory duty. The measure of legal duty in the one case is to be determined upon common law principles, while in the other the statute fixes a standard by which the fact of negligence may be determined.

*Id.* at 641, 116 N.W.2d at 531.

■ Under common law, negligence is the failure to exercise ordinary care under the circumstances. *Wittmeier v. Post*, 78 S.D. 520, 526, 105 N.W.2d 65, 68 (1960). Ordinary care is that which an ordinarily prudent or reasonable person would exercise under the same or similar circumstances. *Granflaten v. Rohde*, 66 S.D. 335, 339,

283 N.W. 153, 155 (1938). It is commensurate with existing and surrounding hazards. *Id.* The greater the danger, the greater is the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts to ordinary care in view of the situation and circumstances. *Id.* The settled law in South Dakota, as evidenced by *Ward v. LaCreek Electric Association, Inc.*, 83 S.D. 584, 163 N.W.2d 344 (1968), is that the distributor of electrical energy must exercise ordinary and reasonable care under all the circumstances to prevent injury.

Pursuant to SDCL 47–21–75, the NESC provides the minimum requirements an electric cooperative must meet in construction of transmission lines. Although both parties' experts agreed there was no specific section of the NESC dealing with construction of lines near wells, Lovells claim the Coop violated the purposes and intent of the safety code by constructing the line near a well. We do not agree.

■ National Electrical Safety Code Rule 200 states that the Code was not intended as a design specification, but rather a practical safeguard in accordance with accepted practice for given local conditions. In other words, it is to accommodate the realistic use of electric power on farms and ranches in rural areas. This necessarily contemplates the construction and operation of overhead electric lines in the proximity of silos, wells, grain bins, irrigation pivots, and other areas where the use of elevated equipment is often required.

The position of Lovells would in effect impose strict liability upon the Coop and make it an insurer for the safety of the user. This we have declined to do. *Ward*, 83 S.D. at 590–91, 163 N.W.2d at 347.

■ Proof of compliance with the standards furnished by the NESC, however, is not conclusive on the trier of fact on the question of defendant's due care. Actionable negligence may exist even though the utility involved complied with the requirement of the safety code. *Nelson v. Iowa-Illinois Gas & Electric Co.*,

160 N.W.2d 448 (Iowa 1968); *see also Wray v. Benton County Public Utility District,* 9 Wash.App. 456, 513 P.2d 99 (Wash.Ct.App.1973); *compare Foreman v. Atlantic Land Corp.,* 271 S.C. 130, 245 S.E.2d 609 (1978). What constitutes due care and other questions relating to negligence and contributory negligence are generally questions of fact for the jury. *Hitzel v. Clark,* 334 N.W.2d 37, 38 (S.D.1983); *Stoltz v. Stonecypher,* 336 N.W.2d 654, 657 (S.D.1983). That deference, however, is not absolute.

 Under our comparative negligence statute[3] a plaintiff may recover if his negligence was slight in comparison with the negligence of the defendant. SDCL 20-9-2. When facts show that the plaintiff, beyond reasonable dispute, was guilty of negligence more than slight, it is the function of the trial court to hold, as a matter of law, for the defendant. *Starnes v. Stofferahn,* 83 S.D. 424, 432–33, 160 N.W.2d 421, 426 (1968). The comparison is made with the negligence of the defendant, rather than with the ordinarily prudent person. *Crabb v. Wade,* 84 S.D. 93, 97–98, 167 N.W.2d 546, 549 (1969). However, the norm of conduct of an ordinary, reasonably prudent person must be considered in determining the extent to which each party fell below that standard and, thus, was found negligent or contributorily negligent. *Nugent v. Quam,* 82 S.D. 583, 594–95, 152 N.W.2d 371, 377 (1967).

 In *Associated Engineers, Inc. v. Job,* 370 F.2d 633 (8th Cir.1966), which also involved electric power lines, the Eighth Circuit Court of Appeals, following decisions of this court, said:

> [T]hree factors may properly be considered in appraising the quality of a plaintiff's negligence: [1] the precautions he took for his own safety; [2] the extent to which he should have comprehended the risk as a result of warnings, experience, or other factors, and [3] the foreseeability of injury as a consequence of his conduct.

*Id.* at 641. When these factors are applied to the undisputed facts it is difficult to envision how Roger and Earl could have been more negligent. The record has been searched in vain for a single measure they took for their own safety. The reader is left only with sympathy and compassion. They were intimately familiar with the location of the well, the height of the transmission line and the depth of the well. They fully comprehended the hazard created when grounded metal contacts an electric line. They did precisely what Coop had publicly warned people not to do, warnings which Earl acknowledged he had seen. A simple phone call to Coop would have caused the current to be cut while the well pipes were pulled. There was no evidence questioning the actual construction or maintenance of the poles or line.

Assuming the issue was properly before the jury, the trial court correctly instructed the jury concerning the standard of care as recommended by this court in *Ward,* 83 S.D. at 590–91, 163 N.W.2d at 342. The trial court, however, should have directed a verdict for Coop because reasonable minds could but conclude as a matter of law that the Lovells' negligence was more than slight in comparison with any negligence of the Coop. Under these facts, to hold otherwise would effectively invalidate the comparative negligence statute.

Coop also claims that Lovells assumed the risk in choosing to pull the well pipe near a functioning transmission line without uncoupling the sections. The question of whether a plaintiff assumed the risk, like contributory negligence, is ordinarily a jury question. *Berg v. Sukup Manufacturing Co.,* 355 N.W.2d 833, 835 (S.D.1984).

---

3. SDCL 20-9-2 provides:

In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

The jury was correctly instructed on the issue of assumption of the risk:

It is the law that a person cannot be heard to complain of a dangerous condition, situation or conduct when such person with knowledge thereof voluntarily places himself in a position or voluntarily continues in a position wherein he knows of hazard of injury or damage to himself from such dangerous condition, situation or conduct. In such a case, such person is deemed to have assumed the risk of such injury or damage and is not entitled to any recovery for the same.

South Dakota Pattern Jury Instructions, v. I (Civil), No. 13.01; *see Myers v. Lennox Coop Association*, 307 N.W.2d 863, 864 (S.D.1981); *compare Martino v. Park Jefferson Racing Association*, 315 N.W.2d 309, 313–14 (S.D.1982). Like contributory negligence, however, the defense of assumption of risk can become a matter of law. Unfortunate as the accident was, by Lovell's own testimony they assumed the risk as clearly as they could.

Accordingly, the judgment is reversed.

WUEST, J., and HERTZ, Acting J., concur.

MORGAN and HENDERSON, JJ., dissent.

MORGAN, Justice (dissents).

I dissent.

Coop's contributory negligence defense is based in large part upon SDCL 49–32–11 [1] and SDCL 49–32–12.[2] Violation of a statute is negligence as a matter of law if the statute was intended to protect the class of persons injured against risk of the type of harm which in fact occurred. *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D. 1982); *Weeks v. Prostrollo Sons, Inc.*, 84 S.D. 243, 169 N.W.2d 725 (1969). Violation of a statute will result in contributory negligence as a matter of law if the statute was intended for the benefit of the defendant and the violation was a proximate cause of plaintiff's injuries. *Alley v. Siepman*, 87 S.D. 670, 214 N.W.2d 7 (1974).

Arguably, the Lovells did violate SDCL 49–32–11, as the well pipe came into contact with the electrical lines. The thrust of Lovells' case, however, was that Coop was negligent in constructing the transmission lines near the Lovells' well. In such a case, both parties could be held negligent.

In this regard, South Dakota has adopted a comparative negligence standard. SDCL 20–9–2. The jury was instructed on this standard as follows:

### NO. 18

If the jury should find the plaintiffs were contributorily negligent, as elsewhere in these instructions defined, the plaintiffs may still recover if the jury should find that such contributory negligence of the plaintiffs was slight in comparison with the negligence of the defendant. This rule has no application unless such contributory negligence of the plaintiffs was slight in comparison with the negligence of the defendant. If the jury considers that such contributory negligence of the plaintiffs exceeds that which in the circumstances is slight negligence in comparison with the negligence of the defendant, the plaintiffs

---

**1.** SDCL 49–32–11 provides:

No person may, individually or through an agent or employee, and no person as an agent or employee of another person, may perform or permit another to perform any function or activity if it is probable that during the performance of such activity any person or any tool, equipment, machinery or material engaged in performing work connected with such activity, will move to, or be placed in, a position within six feet of any high voltage overhead electrical line or conductor. A violation of this section is a Class 2 misdemeanor.

**2.** SDCL 49–32–12 provides:

No person may, individually or through an agent or employee, and no person as an agent or employee of another person, may store, operate, erect, maintain, move or transport any tools, machinery, equipment, supplies, materials, apparatus, house or other building, or any part thereof, within six feet of any high voltage overhead conductor. A violation of this section is a Class 2 misdemeanor.

cannot recover. If the jury should find that the plaintiffs are contributorily negligent, but under the rule just stated, the plaintiffs are still entitled to recover, then the damages to be awarded to the plaintiffs must be reduced in proportion to the amount of the plaintiffs' contributory negligence.

Under our comparative negligence standard, plaintiffs may recover if their negligence was slight in comparison to defendant's negligence. Lovells argued that their negligence, if any, was indeed slight when compared to Coop's. Lovells claim that they would not have been placed in a position to be contributorily negligent if Coop had not negligently constructed the electrical lines. Therefore, even if the Lovells were contributorily negligent as a matter of law, they may still recover if their negligence was only slight in comparison with Coop's. I cannot say that Lovells were guilty of more than slight negligence as a matter of law. "Questions relating to negligence and contributory negligence are questions of fact for the jury in all except the rarest of instances." *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983); *see also Hoffman v. Royer*, 359 N.W.2d 387 (S.D.1984). This case does not present one of those rare instances in which contributory negligence as measured against Coop's negligence was not a matter for the jury. Further, we have before us no indication of whether the jury did find Roger and Earl contributorily negligent. The jury returned a general verdict in the Lovells' favor. No special interrogatories were given to the jury. We therefore have nothing in the record to indicate the jury found any contributory negligence on the part of the Lovells.

Coop also claims that Lovells assumed the risk in choosing to pull their well near a functioning transmission line. The question of whether a plaintiff assumed the risk is ordinarily a jury question. *Berg v. Sukup Mfg. Co.*, 355 N.W.2d 833 (S.D.1984).

The jury was instructed on the issue of assumption of the risk as follows:

NO. 20

It is the law that a person cannot be heard to complain of a dangerous condition, situation or conduct when such person with knowledge thereof voluntarily places himself in a position or voluntarily continues in a position wherein he knows of hazard of injury or damage to himself from such dangerous condition, situation or conduct. In such a case, such person is deemed to have assumed the risk of such injury or damage and is not entitled to any recovery for the same.

Once again, I cannot say that the Lovells assumed the risk as a matter of law in pulling the well near the electrical lines.

Accordingly, I would affirm the judgment of the trial court.

HENDERSON, Justice (dissenting).

I join the dissent of Justice Morgan and would affirm the judgments based upon the general jury verdicts, as follows: Plaintiff Earl Lovell, $35,000.00; Plaintiff Blanche Lovell, $1,877.84; and Plaintiff Roger Lovell, $79,025.00. One of the oldest and most cardinal rules of appellate review in this state, going back to the days of the Dakota Territory, is simply this: We review the evidence in the light most favorable to the prevailing party and resolve conflicting evidence in favor of the verdict. *Hoffman v. Royer*, 359 N.W.2d 387, 388 (S.D.1984) (citing *Stoltz v. Stonecypher*, 336 N.W.2d 654 (S.D.1983); *Zee v. Assam*, 336 N.W.2d 162 (S.D.1983); *Barnhart v. Ahlers*, 79 S.D. 186, 110 N.W.2d 125 (1961); and *Hullander v. McIntyre*, 78 S.D. 453, 104 N.W.2d 40 (1960)).

Without contacting the Lovells, and hence without their knowledge, the Coop installed a three-phase (four line), high-voltage power distribution line directly over the well enclosure. The Lovells were thereby forced to work under these high-voltage lines. It was a transmission line, not a service line, and it carried 14,800 volts of electricity. The Lovells were not the recipients of this power; they were only subjected to its dangerous and deadly

force.[1] Any group of laymen would have known, let alone men supposedly experts in erecting high-voltage distribution lines, that these high-voltage lines of extreme power would create a deadly force within the near proximity of a well where the Lovells would work and, at some time, be required to pull their well. Obviously, the jury was horrified by the high-handed, extremely negligent, and callous disregard of the Lovells' safety. The transmission line was built by young men who had no training or experience with the National Electrical Safety Code which establishes the minimum standards for the construction of electrical lines. According to the testimony, the contractor was not an electrician. Per his own testimony, he was totally unfamiliar with the National Electrical Safety Code. Therefore, it should come as no surprise that the jury abhorred these negligent practices and considered the negligence of the Lovells to be only slight. There was testimony by experts that there were numerous violations of not only the National Electrical Safety Code but the Rural Electrification Administration required standards. There are numerous citations to the NESC and REA requirements found in REA Bulletin 160–2, July 1969, *Engineering and Operations Manual for Rural Electric Systems, Distribution Line Design (mechanical)*, which were admitted in evidence, before the jury, without objection. Dr. Oliver and Dr. Reimenschneider both testified as to specific violations of both of these codes. Essentially, both testified that it was not an accepted good practice of engineering to run a high-tension line over a deep well and that the Coop had various alternatives available to minimize a clearly foreseeable danger to human life. These alternatives included relocating the line and placing it somewhere other than in close proximity to the well or to run some sections of the line underground, or to use insulated cable or guarded cable which was readily available or to place warnings. Specific references to both of these codes were brought to the jury's attention and specific violations thereof were highlighted by the testimony of these two learned men. Moreover, the negligence of the Coop was corroborated by its own witness who admitted, among other things, that the existence of a deep well is "just like a flag that warns you you should stop and look." Several times during the trial, questions were asked concerning the design and construction of this transmission line. This was because of Section 210 of the NESC, which provides, inter alia: "All electric supply and communication lines and equipment shall be of suitable design and construction for the service and conditions under which they are to be operated." The Coop's expert admitted that the Coop was required "to take into account the kind of activity that is likely to take place under the lines." Not one shred of testimony was adduced that the defendant ever had an engineer on the site when the transmission line was constructed. There was testimony that there was no insulated wire either below or above ground and no warning signs. Failure to convey a warning of the danger or the posting of warning signs is an established basis for liability. Annot., 69 A.L.R.2d 9, 41 (1960); Annot., 69 A.L.R.2d 93, 131 (1960).

Electrocution was severe in this case causing injuries to hands, backs, and feet. Flesh, muscle, and tendon were burned from the inside out, even melting socks to their feet and blowing a hole in their feet and boots. Bone was actually burned in two. There were substantial medical bills created by these personal injuries and these plaintiffs, under all of this evidence, are entitled to recover the verdicts awarded by the jury. This, now, will all be taken from them by the decision of this Court. Laymanistic participation in the judicial system should be encouraged rather than discouraged. Without an active and enthusiastic laity in the court system, the laity

---

1. Lovells had a domestic well which required 110-volt service for their one-half horsepower motor. This 14,800-volt line was to service as many as 75, eight tower, center pivot irrigation systems.

become distrustful and restless with the judicial system. Surely, the twelve jurors who awarded these damages will be shocked by these verdicts being nullified and stripped from these very seriously injured citizens of Hughes County. We, versed in the law, need a communion with the people. Were it so, we could all join together in a unity for the betterment of justice. In the preamble of the United States Constitution, it begins "We the people...." It is not a government of states nor a government of the intelligentsia nor a government of lawyers nor a government of judges. We the people join together to "establish justice" and to "secure the Blessings of Liberty." Therefore, let us in the judicial branch, deal the people in. Let us encourage them to participate.

In *Ward v. LaCreek Elec. Ass'n*, 83 S.D. 584, 590, 163 N.W.2d 344, 347 (1968), we recognized that "[t]he distribution of electrical energy is a highly dangerous activity...." We further recognized that entities concerned with distributing electrical energy were "under a duty to exercise ordinary and reasonable care under all the circumstances to prevent injury to persons and property. This requires care commensurate with the danger involved consistent with the practical operation of the business." *Id.* Can there be any doubt that as the high voltage intensifies and increases and is placed near human activity, the danger increases? Surely, the jury must have considered the negligence of the Coop to be great in having young, inexperienced men do the construction work without the benefit of an engineer on the job augmented by expert testimony that safety standards were absolutely violated. It is wrong for this appellate court to disregard a degree of care which must be commensurate with the danger involved. Protective measures are proportioned to the danger which the transmission line carries. *Bennett v. New York & Queens Elec. Light & Power Co.*, 294 N.Y. 334, 62 N.E.2d 219 (1945), *reh'g denied*, 294 N.Y. 964, 63 N.E.2d 189 (1945); 26 Am.Jur.2d *Electricity, Gas, and Steam* § 42 (1966).

As for the Coop's contributory negligence and assumption of risk arguments, I cannot say they rise to such a height that they require, *as a matter of law*, resolution in the Coop's favor. These were fact questions for the jury. In *Stoltz*, 336 N.W.2d at 657, Chief Justice Fosheim, writing for a full Court, expressed:

Questions relating to negligence and contributory negligence are questions of fact for determination by the jury *in all except the rarest of instances. Ricketts v. Tusa*, 87 S.D. 702, 214 N.W.2d 77 (1974); *Myers v. Quenzer*, 79 S.D. 248, 110 N.W.2d 840 (1961); and *Peterson v. Denevan*, 177 F.2d 411 (8th Cir.1949). (Emphasis supplied.)

Tugging, straining, pulling, and lifting a well is an arduous task. Heads are down as muscles pull. As this cumbersome equipment was pulled, if the Lovells were contributorily negligent, even momentarily, the comparative negligence statute would activate. Once activated, a jury is instructed to reduce the amount of the award proportionately to their negligence, if negligence is found to exist. Here, the jury granted damages far less than the testimony in the case. Thus, common sense tells us that the jury reduced the damages under the instructions and equated the comparative negligence statute and instruction as it was their duty. Why fault the jury from an appellate perch?

The Coop installed the power line over the well and knew, or should have known, that the Lovells would have to pull the well. Thus, the Coop could reasonably anticipate the probability of injury to someone who had a right to be in the vicinity of the power line. 26 Am.Jur.2d *Electricity, Gas, and Steam* § 43 (1966). The trial transcript substantiates that the Coop had previously adopted a policy of placing high-voltage transmission lines at least 30 to 50 feet from domestic wells. Obviously, the jury realized that the Coop's negligence was great, for specific evidence came in that the Coop did not build its lines over a well owned by one Sheehan, realizing its duty in that instance to minimize danger to human life. In *Elliott v. Black River Elec.*

*Coop.*, 233 S.C. 233, 104 S.E.2d 357 (1958), the Supreme Court of South Carolina held that there was no error in submitting a case to the jury wherein a wife sued for the death of her husband which occurred while he was removing a 21-foot lift rod from a well, there being high-tension wires 21½ feet above the ground and directly over the well. In *Alabama Power Co. v. Irwin*, 260 Ala. 673, 72 So.2d 300 (1954), the power company was held liable where the deceased was electrocuted when a 30-foot metal pipe, which he and a fellow worker were removing from a well pump, came in contact with an uninsulated 110-volt service line conveying electricity to the well and to the decedent's residence. Liability was also determined against a power company in the case of *Green River Rural Elec. Coop. Corp. v. Blandford*, 306 Ky. 125, 206 S.W.2d 475 (1947), where the plaintiff, while assisting in raising a 30-foot pipe from a well, received a shock when a portion of the pipe came in contact with a high-tension wire maintained by a power company over the well, whose location under the power line was known to the company. In *Southern Pine Elec. Power Ass'n v. Denson*, 214 Miss. 397, 57 So.2d 859 (1952), *aff'd*, 214 Miss. 397, 59 So.2d 75 (1952), liability was affixed against a power company when a man and his wife were electrocuted when removing a pump with a 21-foot pipe and a 5-foot point from a well, when contact was made with a high-tension wire maintained 25 feet above the ground and within 3 to 6 feet of the well. Again, liability was determined against a power company in the case of *Brillhart v. Edison Light & Power Co.*, 368 Pa. 307, 82 A.2d 44 (1951), where the decedent was killed while helping place a 21-foot pipe into a well when the top of the pipe came into contact with a high-tension wire which was only 10½ feet from the top of the pump house. These cases I have cited clearly reflect that contributory negligence has been frequently raised in which injury or death has resulted from the raising of some object, such as a metal pipe or pole, and bringing it into contact with an overhead wire. In such situations, contributory negligence has been held to be a question for the jury and not something to be stripped away by the High Court in its appellate loft. In effect, is not the majority opinion saying that the plaintiffs were so utterly stupid that they caused their own injuries? If that is what the majority is holding, the jury in this case did not think so. When I read decisions such as this which take away the jury's verdict, after it has carefully deliberated, I fear for the Law. The majesty of the Law beckons us to all come and partake of its banquet. Having joined the banquet table and partaken, the jury is told that it was, in effect, not a welcome guest in the first instance. Here, the Coop is not prevailing before people who were sworn to try the case; it is prevailing by an appeal via a majority vote of one. These Hughes County residents had to work on their well; inevitably, it would need repair and, inevitably, they were forced into a situation of working under these high-powered transmission lines placed by the Coop's agents directly over the Lovells' well. The father was an elderly man and suffered from poor eyesight; the son, Roger, had an eighth grade education. This well was never pulled in any manner other than the way they were pulling it on the fateful day in question. This well was not dug and placed under these high-voltage lines; the lines were installed directly over a long-existing well. Every expert testified that there was no indication, to any layman, that this particular electric line carried anything other than the 110-volt service. The point is that the Lovells had no knowledge of the extreme danger in the line. They had no knowledge of the existence of the risk and no appreciation of its character; therefore, they could not have voluntarily accepted the risk.

This majority opinion assumes too much from its appellate perch; it assumes that the Lovells were per se negligent and that the Coop was not. This majority opinion assumes that the Lovells did not have the presence of mind to protect themselves, but the facts, as presented to the jury, reflect that it was the great amount of negligence of the Coop which placed these laymen into

a high-risk, highly dangerous situation. Under these circumstances, the Coop cannot rely on technical violations of SDCL 49–32–11 and SDCL 49–32–12, for it was the Coop's actions, performed with the knowledge that the well would have to be pulled, which set up the events which the Coop now claims to constitute contributory negligence.[2] Coop, mired in negligent mud, cannot ooze and create solid legal ground to stand upon, when it is begotten from its own negligent conduct. Working in the vicinity of high-voltage electricity is not negligence per se nor assumption of the risk per se. *Barrois v. Service Drayage Co.*, 250 So.2d 135, 141 (La.App.1971).

To support an assumption of the risk defense under South Dakota law, it is well established that the defendant must show that [the plaintiff] not only had knowledge of the existence of the risk and an appreciation of its character but also that he voluntarily accepted this risk, i.e., that he had a sufficient amount of time and enough knowledge and experience to make an intelligent choice. *Ordinarily, whether the plaintiff assumed the risk is a question for the jury.* (Emphasis supplied mine.)

*Kessler v. Bowie Machine Works, Inc.*, 501 F.2d 617, 621 (8th Cir.1974).

In the present case, the Lovells had no choice but to work on the well where it was and in the manner in which the work was performed. The well rods could not be disconnected and could not be raised only slightly. It was either perform the work or let the well die. Cattle were watered from the well, which was a hand-dug well, and which obtained 110-volt service in the 1960's. It was the Coop which stopped the distribution line approximately 30 to 50 feet away from the well, installed a fuse box, and then ran a 110-volt service the last 30 to 50 feet to the well motor. A substantial enclosure was constructed around the well. The Coop had knowledge of the history of this 110-volt service to the well and did not extend the 110-volt distribution line over the top of the well or the well enclosure. For years, the Coop knew that these ranchers had to work on this well and regularly repair it. Testimony reflected that the Coop's engineer, contractor, and employees all knew that the well had to be "pulled" to be serviced. It is logical and reasonable to assume that the Coop therefore knew that there would be a normal use of the area around this well directly below this high-voltage line; this is established by testimony in the record, to include that the Coop had a duty to anticipate the normal use of the area directly below the high-voltage transmission line. This jury had photographs before it prompting it to the conclusion that the Lovells would be forced to work under this high-voltage line when they would necessarily be required to pull their well from time to time. This hand-dug well was the lifeblood for watering the cattle and sustaining the ranching operation. This jury had a right to compare the negligence of these two parties and to determine the relative negligence of each. A danger, created by the Coop, was clearly foreseeable and a duty was owed to minimize the danger to human life. Before the jury, was the fact that the Coop could have run the line on the other side of the road, put up warning signs, relocated the line, or used insulated wire.

This decision is a blow to these injured plaintiffs and the jury system. Conflicts in the evidence are to be resolved to sustain the jury verdict. This includes inferences which can be rationally drawn in favor of the jury verdict. If there is competent and substantial evidence to support the jury verdict, it must stand. If there is such evidence as to allow reasonable minds to differ, the case must be submitted to the jury. *See Smith v. Halverson*, 273 N.W.2d 146 (S.D.1978); *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978); *Heiser v. Rodway*,

---

**2.** Testimony reveals that an engineer, testifying for the Coop, stated that the Coop envisioned and planned that the Lovells would only have to pull the well up to 18 feet, and to no higher distance up to within 6 feet of the high-voltage line. It is undisputed that the well could not be pulled in 18-foot sections. The well could not be uncoupled, as the Coop advocated at trial, and the only manner in which the well could have been pulled was to cut the pipe and rod by an acetylene torch thereby destroying the well.

247 N.W.2d 65 (S.D.1976); *Beck v. Wessel,* 90 S.D. 107, 237 N.W.2d 905 (1976); *Ehlers v. Chrysler Motor Corp.,* 88 S.D. 612, 226 N.W.2d 157 (1975); and *Strain v. Shields,* 63 S.D. 60, 256 N.W. 268 (1934). Thus, there are over 50 years of compelling precedent that this reviewing Court must examine the evidence in the light most favorable to the nonmoving party on a motion for directed verdict and to give said nonmoving party the benefit of all reasonable inferences therefrom. These cases, now cited in this dissent, vividly portray the grave mistake of this Court in its function on a standard of review of evidence in a civil action. When this Court is faced with whether or not there is substantial evidence to sustain the cause of action, we are to take the same approach as the trial court in its determination. We, as well as the trial court, are simply not free to weigh the evidence or gauge the credibility of the witnesses. We have no right to look upon the courtroom from our offices at the state capitol and determine who was telling the truth and who was not and which witness was the better qualified to observe and which expert witness had the best opinion. These are all matters for the jury. The trial court must accept, when called upon to rule on a motion to direct a verdict, the evidence which is most favorable to the party against whom the motion is sought and to indulge in all legitimate inferences in his favor that can fairly be drawn therefrom. *Johnson v. Chicago & Northwestern Ry. Co.,* 71 S.D. 132, 22 N.W.2d 725 (1946); and *Hansen v. Isaak,* 70 S.D. 529, 19 N.W.2d 521 (1945). When a trial judge has engaged his legal training and mind and experience in this regard, he is faced with a question as to whether there is substantial evidence to sustain the cause of action. If there is, he is required to submit the case to the jury. This is likewise the view we must take of the evidence when trial court determinations of this kind are challenged on appeal. *Budahl v. Gordon & David Associates,* 323 N.W.2d 853 (S.D. 1982); and *Johnson v. John Deere Co.,* 306 N.W.2d 231 (S.D.1981).

This decision strikes at the heart of the right to a trial by jury, guaranteed to us by our forefathers. Seventh Amendment, United States Constitution, "Bill of Rights," adopted first session of Congress, in force as of December 15, 1791; South Dakota Constitution Article VI, § 6. In the quest of serving power to the powerful—in the ambition to grow and deliver a 14,800-volt line to as many as 75 center pivot irrigation systems—the weaker—the less influential—were callously disregarded and subjected to grave danger. In the stress of legal fight, the Coop second-guesses the actions of its very own and having wounded and crippled them, now assails them in law even though a jury has found righteousness in their cause. I appreciate that this is not an ecclesiastic court. Solemnly, it appears to me that our REA brothers have subserved the Golden Rule by torturing the application of the comparative negligence rule. That the law could only grow more sensitive of harm to man ... that the law could only vibrate to the chords of anguish and pain ... that the law would reach out to the oppressed and the least of our brothers ... that the law would protect the weak from the strong ... this, I would have it do. Here. Now. For the Lovells. Verily, I do believe that the Lovells had no choice and the Coop's assumption of risk defense does not carry the day.